FLAVIA M. T. PENDILL, FRANK PENDILL, JAMES PEN-
DILL, AND LOUIS PENDILL V. THE UNION
MINING COMPANY ET AL.

*Landlord and tenant—Forfeiture of lease—Re-entry—Demand for
payment of rent—Equity.*

1. A lessor, upon the failure of the lessee to pay rent, took *peaceable*
   possession of the leased premises under a clause in the lease pro-
   viding for a *re-entry* in case of such non-payment, without any
   previous notice whatever, and declaring that *thereafter* the lease
   should be absolutely void.

   *Held,* that no demand for rent was necessary before such
   re-entry, which was the mode agreed upon for declaring the for-
   feiture of the lease, and that the lessor had the right, and it was
   his duty in the first instance, to resort to such re-entry, and, if
   prevented, it was his privilege to adopt any other lawful mode,
   and take the statutory or any other appropriate proceeding to
   obtain such possession.

2. The demand for payment of rent, required by How. Stat. § 8295,
   and at common law, as a condition precedent to a re-entry, may
   be waived by the parties.

3. The party entitled to the possession of property has a right to take
   it in any manner not constituting a breach of the peace, and it
   was never the design of How. Stat. § 8295, to take away this right.

4. Where no provision is made in a lease for the *mode* of its forfeit-
   ure, or of notice of the lessor's election to forfeit it, he must pro-
   ceed according to the recognized rules of the common law, as
   modified by How. Stat. § 8295.

5. The receipt of rent, after the forfeiture of a lease for its non-pay-
   ment, unless fully paid, is not a waiver of such forfeiture.

6. A bill filed to remove a cloud caused by the claims of a lessee
   under a lease alleged to have been forfeited, and asking that the
   court ascertain if such forfeiture is complete, and, if so, remove
   the cloud, is not open to the objection that equity will never
   enforce a penalty or forfeiture.

Appeal from Marquette. (Grant, J.)    Argued November 4,
1886.    Decided January 13, 1887.

Bill to remove cloud from title.    Defendant company

appeals.   Decree affirmed.   The facts are stated in the opinion.

*F. O. Clark,* for complainants.

*Ball & Hanscom,* for defendant corporation.

SHERWOOD, J.   The bill in this case is filed by the complainants, who are the heirs of James P. Pendill, deceased, against the defendants, to remove a cloud from the title of some mining property described in the bill, situated in the county of Marquette, and to restrain by injunction the removal by the defendant of machinery from the mine, which had been previously leased to John Burt, with the land containing the same.

The mine had been opened and worked when the lease was given by Mr. Pendill and wife to Mr. Burt, which evidently contemplated the discovery of ore at other places on the leased land, and that it should be opened and mined.

The lease was made on the first day of May, 1880, and was to continue 19 years and 8 months, and was to be in force that length of time, provided John Burt, his representatives or assigns, should pay to James P. Pendill, his representatives or assigns, 50 cents per gross ton as a royalty for each and every ton of 2,240 pounds of iron ore mined and shipped or carried away from the land in question.

It is further provided in the lease that John Burt, his representatives or assigns, should pay to James P. Pendill, his representatives or assigns, *at least* $2,000 per annum in each and every year, as a royalty or rental, irrespective of the amount of ore that should be mined, and whether the ore actually mined, at the rate of 50 cents per ton royalty, would equal that amount or not.

It was also agreed that John Burt, his representatives or assigns, should, on the fifth of each month, report to Pendill, his representatives or assigns, the full amount of ore mined and carried away from the land during the previous month,

and that he should at the same time pay for the iron ore so mined at the rate mentioned.

It also appears from the lease that it was agreed that said Burt, and his representatives or assigns, should pay all taxes, general and special, that should be levied upon said property during the continuance of the lease.

The lease also provides that *if Burt should fail to pay the said royalty* as specified, or any part thereof, or should be behind in his payments, according to the terms specified,—

" *For the space of ten days thereafter,* or in case of the *non-performance of any of the covenants made by the said Burt,* then, and from thenceforth, it shall and may be lawful for the said Pendill, his heirs and assigns, into the said demised premises, or any part in the name of the whole, *without any previous notice whatever,* to re-enter, and the same to have again, repossess, and enjoy."

Mining operations were carried on under this lease for a time by individuals. After the Union Mining Company was organized, and on the sixteenth day of December, 1880, the lease was assigned to it, and the defendant carried on the mining business on the leased property until February, 1883, when it was suspended by the mining company. At the time of the suspension, the mining company gave a chattel mortgage on the mining tools, engine, etc., to Richard Bryant. in trust, to pay employés of the company to the amount of $5,-192.47. Hiram A. Burt was the president and manager of the company at that time.

On the twenty-first day of June, 1883, the property covered by the Bryant mortgage was sold, at public sale, to Sarah B. Burt, wife of Hiram A. Burt, for the sum of $2,000.

On the ninth day of February, 1883, the company gave a mortgage on its leasehold interest to one Henry Merry, as trustee, to secure the sum of $5,000; and upon the first day of September, 1883, the company executed to Matthew H. Maynard, as trustee, notes amounting to $50,000, secured by mortgage upon this same leasehold interest. Both Maynard

and Merry, as trustees, are made defendants in this case. The property was all kept on the leasehold premises.

Sarah B. Burt claims the right, through Hiram A. Burt, to remove the property purchased at the chattel-mortgage sale, and also the right to remove the engine and hoisting drums placed by Mr. Pendill at the mine upon the property before the lease of the property was made; and Mrs. Burt was made a defendant, that she might be enjoined from making such removal.

During the time the company carried on the business of mining it expended about $10,000 in equipments, and about the same amount in explorations, both in the mine and on other parts of the property, and the lessor received about $13,000 in royalties.

No rent, taxes, or royalty was paid by the company after the year ending May 1, 1883, and it failed to make any monthly reports, as required by the lease, thereafter. The defendant company having ceased all mining business upon the premises, and removed the pumps and pipes out of the mine, the property presenting the appearance of having been abandoned, the lessor, James P. Pendill, went to the property, and, not finding it in the custody of any one, or any one claiming control thereof, without giving any notice to any one, took possession of the property, locked up the boiler-house and engine-room, and other buildings, with all the machinery and tools therein; and, from that time to the present, he or his heirs have continued such possession.

Mr. Pendill died in March, 1885, and the complainants, his widow and heirs, bring this suit.

The foregoing contains the material facts in the case. Considerable testimony was taken in open court, before Judge Grant, who heard the cause, and rendered a decree therein declaring the leased property free and clear of all liens and incumbrances, and the lease canceled, and null and void. The decree further dismissed the bill against Sarah B.

Burt, without prejudice to complainants to have their rights as against her adjudicated at law.    Costs were given to the complainants against the defendant company, and against them in favor of Mrs. Burt.    The Union Mining Company alone appeals.

The provisions of the lease under which Mr. Pendill proceeded to recover possession of his property, and to relieve it from the incumbrance of the lease, are found in the following clause.    After stating the terms and various provisions, it says:

"Provided always, and these presents are upon the express condition, that if it shall so happen that the rent above reserved, or any part thereof, or the taxes or assessments to be paid by the said party of the second part, be behind and unpaid at the times or on the days above mentioned for the payment thereof, and for the space of ten days thereafter, or in case of the non-performance of any of the covenants made by the said party of the second part, at any of the times mentioned for the performance thereof, thence and from thenceforth it shall and may be lawful for the said parties of the first part, their heirs and assigns, into said demised premises, or any part in the name of the whole, without any previous notice whatever, to re-enter, and the same to have again, retain, repossess, and enjoy, and the said parties of the second part, its successors, and all other tenants and occupants of the said demised premises, or any part thereof, thereout and therefrom, utterly to expel, put out, and remove; and from and after such re-entry made, this lease, and every part thereof, shall cease and be absolutely void as respects the covenants to be performed by the said parties of the first part."

There is no question, I apprehend, in this case, but that the defendant company failed to perform the covenants contained in the lease.

Counsel for defendant, however, contend that, even if this be so, such failure was not alone, nor with all that was done by Mr. Pendill, sufficient to annul the lease, and destroy the rights of the defendant company as tenant of the property in question.

It will be noticed that the parties to the lease expressly provide, in case of failure to pay rent, taxes, or royalty, that the lessor may, "without any previous notice whatever," re-enter, repossess, retain, and again enjoy the demised premises; and it further provides that such re-entry and possession may be made by "entering upon a part of the premises in the name of the whole," and further provides that, "from and after such re-entry made, this lease, and every part thereof, shall cease and be null and void."

Upon a full inspection of the record, we are satisfied that, after the failure of the defendant company to perform the covenants of the lease on the part of the lessee, the lessor made such entry, and when such entry was made and possession taken the lease became void. Any other construction would be doing gross injustice to the language used in the lease, and to the expressed intention of the parties.

It is insisted by the learned counsel that a demand for the rent or royalty due was absolutely necessary before the lessor could lawfully re-enter. This was true at common law, and is equally so by our statute (see Com. Dig. "Rent," D 3 (a); 18 Vin. Abr. 482; Bac. Abr. "Rent," I; *Doe v. Wandlass,* 7 Term R. 117; How. Stat. § 8295); but, both at common law and by statute, such demand can be waived by the parties.

No notice of re-entry, or of the intention to re-enter, was ever necessary in either case. It is very evident that something was intended to be waived wherein the lease says that the lessor may re-enter and repossess himself of the premises "without giving any previous notice whatever." It certainly was not notice of an intention to re-enter, because there was nothing of that kind to be waived. There was nothing but the demand of payment of rent or royalty to be waived, and it is quite manifest to us that the notice that he was required to pay the rent or royalty, which was then in arrears, was what was intended to be and really was waived.

A demand for rent is no more or less than a notice that payment is required to be made. It will be seen that the clause in the lease waives every kind of notice.

We think the position taken by the learned counsel for the complainants is correct, that—

"The contract itself governs as to the mode of the termination of the lease, under common-law rules; but, the lease being terminated, the mode of procedure to get possession by summary action is necessary to gain possession, and should be in accordance with statutory requirements. In this case, notwithstanding the lease gave the lessor the right to terminate the lease without any notice whatever, if it became necessary to take proceedings to gain possession, it must have been by summary proceedings, or by an action of ejectment, according to the requirements of statute. But that does not affect the question of forfeiture of the lease. That is simply the question of the mode of gaining possession. The lease being an optional one with the lessor to forfeit or not for condition broken, it was simply necessary that the lessor should, in a positive manner, assert his election to declare the lease forfeited, and that ended the lease. This he did, by taking possession when he found the property in the condition that it was, and by telling the general manager of the defendant company that he had nothing further to do with the property."

The re-entry and taking possession by the lessor was the mode agreed upon by the parties to the lease by which the election to forfeit should be declared. The lessor had the right, and it was his duty in the first instance, to resort to it, and, if prevented in so doing, it was his privilege to adopt any other lawful mode, and take the statutory or any other appropriate legal proceedings to obtain possession. He was not, however, prevented from taking possession under the terms of the lease. If there was no provision in the contract as to the mode of making known the election to forfeit, it would have to be done in accordance with the recognized rules of the common law, as modified by the statute. We think the record shows the possession of the lessor rightfully and not forcibly taken.

"The party entitled to the possession of property has the right to take it in any manner that does not involve a breach of the peace, and it was never the design of the statute to take away that right." *Hyatt v. Wood*, 4 Johns. 150; *Jackson v. Farmer*, 9 Wend. 201; *Low v. Elwell*, 121 Mass. 315; *Mussey v. Scott*, 32 Vt. 82; *Sterling v. Warden*, 51 N. H. 217; *Stearns v. Sampson*, 59 Me. 568; *Kellam v. Janson*, 17 Penn. St. 467; *Overdeer v. Lewis*, 1 Watts & S. 90; *Page v. De Puy*, 40 Ill. 506; *Latimer v. Woodward*, 2 Doug. 368; *Harrington v. Scott*, 1 Mich. 17; *Seitz v. Miles*, 16 Id. 456; *Hoffman v. Harrington*, 22 Id. 52; *Farmer v. Hunter*, 45 Id. 337.

The mere receipt of rent due before forfeiture, after the lease had been forfeited, will not be a waiver of forfeiture. *Jackson v. Allen*, 3 Cow. 220; *Stuyvesant v. Davis*, 9 Paige, 427; *Bleecker v. Smith*, 13 Wend. 533. And, certainly, the mere payment of rent or royalty, unless fully paid, would not waive the forfeiture, as it would be a continuing cause of forfeiture. Tayl. Landl. & Ten. § 500; *Alexander v. Hodges*, 41 Mich. 691; *Doe v. Woodbridge*, 9 Barn. & Co. 376; *Doe v. Allen*, 3 Taunt. 78; *Doe v. Jones*, 5 Exch. 498.

Counsel for defendant further insist that the object of the bill is to declare a forfeiture of an estate for non-performance of a condition subsequent, against the rule that equity will never enforce a penalty or forfeiture. We do not think this is the proper view to be taken of the bill. The bill treats the lease as a void incumbrance, under which the defendant company, by its claims thereunder, clouds the complainant's title. The court is not asked to declare the forfeiture, but to ascertain whether or not a completed forfeiture exists, and, if so, to remove the cloud. The bill does not ask the court to do the thing, but to ascertain whether it has been done, and, if so, to declare its effect upon the title to complainants' property.

It is further said that, even though there has been a forfeiture, a court of equity will relieve the tenant therefrom. Equity has jurisdiction in such cases, but the defendant

company is not before us asking any such relief, and the subject cannot be further discussed.

Upon a review of the case, and briefs of the learned counsel who argued it, we think the circuit judge reached the correct conclusion, and his decree must be affirmed.

The other Justices concurred.