MERK ET AL., RESPONDENTS, *v.* BOWERY MINING COMPANY, APPELLANT.

(No. 1,969.)

(Submitted October 20, 1904. Decided November 17, 1904.)

*Mines—Lease—Option Purchase—Quieting Title—Pleading—Contracts—Appeal—"Adverse Party."*

1. In an action by plaintiffs against their lessee and defendant to quiet title to mining property, *held,* that, under the particular circumstances, the lessee was not an "adverse party" (within the meaning of Code of Civil Procedure, Section 1724) on whom defendants were required to serve notice of appeal.
2. The alleged insufficiency of the evidence cannot be considered on appeal where the record does not show that it contains all, or the substance of all, the evidence.

3.  Under Code of Civil Procedure, Section 1003, providing that the court may grant relief consistent with the complaint, a prayer for such other and further relief as may be meet and agreeable to equity and good conscience warrants the granting of any relief to which plaintiff is entitled on the allegations and proof.

4.  Under Code of Civil Procedure, Section 1310, providing that an action may be brought by any person against another who claims an interest or estate in land adverse to him, to determine such adverse claim the complaint need only allege that plaintiff is the owner, and that defendant claims some adverse right, and a complaint is not objectionable because it alleges defendant's claim to be different from that set up in the answer.

5.  An action seeking to remove as a cloud on plaintiffs' title defendant's claim under a contract giving them an option to purchase, which plaintiffs had declared forfeited before commencement of the action, is not an action to declare a forfeiture.

6.  Where plaintiffs gave a lessee an option to purchase, and the lessee gave defendant an option to purchase from him, pursuant to which defendant made a payment to the lessee, who turned it over to plaintiffs, they were not required to return it to defendant in order to maintain a suit against defendant to remove its claim as a cloud on the title.

7.  Where plaintiffs gave an option to purchase their mining property by the payment of the price in installments at certain dates, time being of the essence, they were not required, on declaring a forfeiture for failure to pay the price as required, to return an installment paid.

8.  Time is of the essence of an option to purchase mining property.

9.  Where a lease of mining property for royalties gave the lessee an option to purchase by paying in installments, and the time for payment of some installments was extended by an agreement which provided that the extension applied only to the payments for purchase, and did not affect the original contract in any other respect, the lease was not extended.

10. A contract leasing and giving an option to purchase mining property provided for the payment of royalties and of the price in installments if the option should be exercised, and declared that, if the lessee should not perform all the conditions, the agreement should be "void *ab initio.*" An extension of time for the payment of installments was given, the supplemental agreement granting it providing that, if the lessee should fail to comply with the contract as modified, such failure should cause a forfeiture. *Held,* that this modified the provision of the original contract that failure to perform should render it void *ab initio.*

*Appeal from District Court, Madison County; M. H. Parker, Judge.*

ACTION by F. R. Merk and another against the Bowery Mining Company and others. From a judgment for plaintiffs, and from an order overruling a motion for a new trial, defendant Bowery Mining Company alone appeals. Respondents filed a motion to dismiss the appeal. Motion overruled, and judgment affirmed.

*Mr. W. A. Clark, Messrs. McBride & McBride,* and *Mr. E. Horsky,* for Appellant.

*Mr. Edmund J. Callaway,* and *Messrs. Word & Word,* for Respondents.

MR. COMMISSIONER CLAYBERG prepared the following opinion for the court:

This is an appeal by the Bowery Mining Company from a judgment against defendants and from an order overruling its motion for a new trial.

Counsel for respondents moves the court to dismiss the appeal on the ground that the notice of appeal was not served on John Berkin, one of the defendants, who is claimed to be an adverse party within the meaning of the statute. (Code of Civil Procedure, Section 1724.) This motion must be disposed of before entering into a consideration of the case, because, if granted, this court has no jurisdiction to investigate the merits of the appeals.

The suit was for the purpose of removing a cloud from the title to plaintiffs' mining claims, to quiet their title thereto, and to enjoin the defendants from prosecuting two actions then pending against plaintiffs—one of forcible entry and detainer to recover possession of said premises, the other for conversion of personal property; but from the record presented on these appeals it is apparent that upon the trial of the case all questions as to the injunctions to restrain the prosecution of these suits were omitted, and the case tried solely upon the issues of removing the alleged cloud from plaintiffs' title to the property and quieting the same. The defendants Berkin and the Bowery Mining Company filed separate answers, to which reference will be hereafter more specifically made.

Upon the motion for dismissing the appeal the only question to be considered is whether Berkin is an adverse party upon whom notice of appeal should have been served. Appellant concedes that the notice of appeal was not served upon him. In order to determine this question, a brief reference to the pleadings, the facts shown at the trial, the findings of the court, and

the decree is necessary. It seems that respondents, being the owners of certain quartz claims, gave Berkin an option to purchase them upon the payment of $80,000 at different times, the last payment being due February 15, 1901. They also, by the same instrument, leased the property involved to Berkin upon certain considerations, which lease was to expire on the 15th day of February, 1901. Berkin afterward entered into an agreement with the Bowery Mining Company, whereby he gave to such company an option to purchase from him the same property on the payment of $100,000, the last payment to be made February 1, 1901, and leased the property to the company upon the same conditions as were expressed in the lease to him from plaintiff, except that the lease was to expire on February 1, 1901. The company entered into the possession of the property, and commenced the performance of its agreement with Berkin. Some months after the execution of these agreements plaintiffs entered into a supplementary agreement with Berkin, whereby, for certain considerations, they agreed to extend the later payments of the purchase price mentioned in the agreement for a period of six months from the time they were to mature under the original agreement. Berkin subsequently made the following indorsement upon the last-mentioned agreement, or upon a copy thereof, and delivered the same to the Bowery Mining Company, viz.: "The same modifications and extensions granted to me by F. R. and M. E. Merk in the foregoing agreement are hereby granted to the Bowery Mining Co. under the sublease made by me to said company embracing the said property." The complaint, in paragraph 4 thereof, alleges that Berkin transferred the original agreement, together with his rights to operate the property, to the Bowery Mining Company, which company accepted the same and operated the property, and that on October 28, 1899, it was agreed between plaintiffs and the Bowery Mining Company that it should deal directly with plaintiffs under the agreement and lease between plaintiffs and Berkin, and should make all payments for royalties due, and all time payments, directly to plaintiffs. Berkin

alleges in his answer that after October 28, 1899, the Bowery Mining Company was the real lessee of plaintiffs under the attornment alleged in paragraph 4 of said complaint, and that, therefore, he was released and freed from all his obligations to pay plaintiffs as specified in his agreement. He admits that the lease to him from plaintiffs expired by limitation on February 15, 1901, and that plaintiffs took quiet and peaceable possession of the property on February 16, 1901, and that at the time of the commencement of the suit they were in peaceable possession thereof, and were entitled to such possession. He then "denies that he claims any right, title or interest in or to the premises mentioned in plaintiffs' complaint, or in or to the possession thereof, and thus answers to paragraph thirteenth of said complaint."

The Bowery Mining Company denies that Berkin ever assigned or transferred his agreement and lease with plaintiffs to it, and denies that it operated the property at all except under a lease from Berkin; denies that it was ever agreed that it should deal directly with plaintiffs; denies that plaintiffs peaceably took possession of the property, but alleges that they took possession by force and arms and with violence. The Bowery Mining Company then alleges by way of affirmative defense that plaintiffs made, executed and delivered to Berkin a lease and option upon the property described in the complaint, and that Berkin entered upon said property as a tenant of plaintiffs; that Berkin subsequently sublet the premises to it, and gave it an option for their purchase; that on May 9, 1900, plaintiffs gave Berkin an agreement extending said lease and option, and that Berkin gave it the same extension; that it occupied the premises as tenant of Berkin; that the plaintiffs agreed with the company to extend the time of the payment of the royalties under the lease until some time after the 15th of February, 1901, and claimed that by this agreement the royalties which were due on the 15th of February, 1901, were to be used and had been used by it in work and improvements upon the property. This is denied in the replication, and the court found that

no such contract had been entered into. The finding is in the following language: "That on or about the 19th day of January, 1901, the plaintiffs and Bowery Mining Co. had some conversation relative to a further extension of time for the payment of royalties and the cash payment on the purchase price of the property due on the 15th day of February, 1901, but no contract was fully made or completed between the parties as to such extension." The Bowery Mining Company further alleged in its answer that $10,000 due plaintiffs on the 15th day of February, 1901, was fully paid by the additional work upon the property in its development and improvement and in the placing of improvements thereon, and that this was done with the knowledge and consent of plaintiffs, and under an agreement with plaintiffs. This is also denied in the replication, and is covered by the finding of the court above quoted. Plaintiffs filed a replication to this answer, in which they reiterated the allegations of their complaint, and alleged that, if the premises were sublet to the Bowery Mining Company by Berkin, it was in equity an assignment to the Bowery Mining Company by Berkin of the lease and option given to him by the plaintiffs. The court found that the Bowery Mining Company was the lessee of Berkin, and that the lease from plaintiffs to Berkin expired by its own limitation on February 15, 1901, and that the supplementary contracts extending the time of payment of the purchase price did not extend the lease. No question is raised by the pleadings or during the trial by either party as to the continuance of the lease and option from Berkin to the Bowery Mining Company, or as to the construction or validity of the contracts between it and Berkin, as between them.

From the circumstances and facts above detailed, and from the testimony hereinafter set forth, we must determine whether or not Berkin is an adverse party within the meaning of the statute.

The Supreme Court of California has announced the rule, and consistently followed it, that: "This court has jurisdiction to entertain an appeal only upon a compliance by the appellant

with the procedure prescribed by the legislature for taking the appeal. Section 940 of the Code of Civil Procedure requires that the notice of appeal shall be served on the 'adverse party.' Unless such service is made, this court has no jurisdiction over him, and any order or judgment it might make with reference to the judgment appealed from would be *ex parte,* and could not affect his rights, or be binding upon him. The 'adverse party' referred to in this section is defined in *Senter* v. *De Bernal,* 38 Cal. 640, to be 'every party whose interest in the subject-matter of the appeal is adverse to or will be affected by the reversal or modification of the judgment or order from which the appeal has been taken.' In *Williams* v. *Santa Clara Min. Ass'n,* 66 Cal. 195, 5 Pac. 85, it was said: 'This court has not jurisdiction to hear an appeal from a judgment unless the appellant shall have served the *notice of appeal* on all the adverse parties —that is to say, upon all whose rights may be affected by a reversal of the judgment; or where the appeal is from part of the judgment, by a reversal of the part appealed from.' * * * Whether a party to the action is 'adverse' to the appellant must be determined by their relative position on the record and the averments in their pleadings, rather than from the manner in which they may manifest their wishes at the trial, or from any presumption to be drawn from their relation to each other, or to the subject-matter of the action in matters outside of the action. It would hardly be contended that the strength or relevancy of the argument of a party at the hearing in the court below could be conclusive for the purpose of determining whether he was in reality adverse, or in accord with the matter argued. If his position on the record makes him nominally adverse, he must be so considered for the purpose of an appeal from the judgment thereon." (*Harper* v. *Hildreth,* 99 Cal. 265, 33 Pac. 1103.)

In the case of *T. C. Power & Bro.* v. *Murphy,* 26 Mont. 387, 68 Pac. 411, this court uses the following language: "A party is adverse who has an interest in opposing the object sought to be accomplished by the appeal. In the language of Chancellor

Walworth in *Thompson* v. *Ellsworth,* 1 Barb. Ch. 624, by 'adverse party' is meant 'the party whose interest in relation to the subject of the appeal is in conflict with the reversal of the order or decree appealed from, or the modification sought for by the appeal.' "

It must be remembered that under the answer of the Bowery Mining Company in the case there was no privity of contract, agreement or estate between the Bowery Mining Company and plaintiffs. They claim to be lessees of Berkin, and to have the right to purchase the property under an option given to it by Berkin. Berkin's right to sell or to give the lease was dependent upon the performance by him of the option and lease given him by the plaintiffs. If he failed to perform these agreements according to their terms, all his right and interest in the property ceased. It will be noticed that the decree of the court says nothing about the validity or time of expiration of the option and lease given by Berkin to the Bowery Mining Company, but it seems to go on the theory that, if plaintiffs were entitled to recover from Berkin, and have the cloud created by the record of the option and lease removed, the same effect would necessarily follow as to the rights of the Bowery Mining Company under its contract and lease with Berkin. It must also be remembered that Berkin, by his sworn answer, admitted that the lease from plaintiffs to himself expired by its own limitation on the 15th day of February, 1901, and that plaintiffs were in the peaceable possession of the property at the time the answer was filed. He is precluded from thereafter taking a position, so far as plaintiffs are concerned, in any wise to the contrary.

The Bowery Mining Company seeks to reverse the judgment of the court below upon the theory, among others, that by the supplementary agreement with Berkin dated May 9, 1900, plaintiffs extended to Berkin the time of the expiration of the lease for six months. They also claim that the supplementary agreement given to it by Berkin extended the term of the lease given to it by Berkin for a like period. We cannot consider,

as an independent proposition, whether there is anything in the last claim of the Bowery Mining Company or not, because the issues presented in the case by the pleadings raise no question as to the extension of the lease from Berkin to appellant. Nothing of this character was filed as against Berkin, and therefore there is nothing in that regard before this court for consideration.

The testimony introduced in behalf of appellant discloses that Berkin was manager of the property for appellant until about July 1, 1900, when he was succeeded by John N. Glass as manager. Berkin expected to go to Alaska, and it was agreed that all payments which were to be made to him under his contract with the Bowery Mining Company thereafter should be made directly to plaintiffs; that in December of that year there was due plaintiffs from Berkin about the sum of $3,000 as royalties, and that the Bowery Mining Company entered into an an agreement with plaintiffs for an extension of the time of payment of the same as follows: $1,000 to be paid about the 1st of January, 1901, the balance in $1,000 payments to be made every ten or fifteen days after the first payment, and agreed to pay the same accordingly; that the first payment was made under this agreement, but no other or further amounts were paid; that in January and the early part of February, 1901, the Bowery Mining Company negotiated with plaintiffs to be allowed to expend the remainder of said royalties and other royalties accruing and accrued upon the development of the property and in doubling the capacity of the mill; that such agreement was made with plaintiffs, but never reduced to writing; that in reliance upon said agreement defendant expended several thousand dollars upon the property in excess of the amount required by the original lease. All this plaintiffs denied in their testimony, and the court found that no such agreement was ever made. By the acts of the Bowery Mining Company above recited, as disclosed by its own evidence, Berkin was thereafter practically eliminated from the contracts, and the company took his place in all subsequent transactions thereunder with plaintiffs. All

the Bowery Mining Company's rights in and to the property in question originally came from its contract with Berkin, which necessarily depended for its validity upon the performance by Berkin of his undertakings and agreements in his contract with plaintiffs. By the action of the Bowery Mining Company above rehearsed, defendant practically assumed thereafter to take Berkin's place in his contracts with plaintiffs, and Berkin was therefore eliminated from the transactions so far as plaintiffs are concerned. They treated the Bowery Mining Company as Berkin's successor in agreeing to extend the time for paying the royalties in December, and in negotiating with it in regard to the balance of the royalties to be paid in January and February. The company acted in the place of Berkin in all these transactions, thereby excluding him therefrom. The record is silent as to whether Berkin ever knew of these transactions at the time they were pending. The contracts between appellant and Berkin were not involved in this suit, save as incidentally, and as claimed as a defense by appellant. Their construction and validity were not in any manner passed upon as between appellant and Berkin, but only as to plaintiffs. The rights of appellant against Berkin under such contracts, whatever they may be, are left undetermined and unimpaired by this suit. Any liability against Berkin in favor of appellant must arise and be based upon said contracts, and cannot arise or become fixed under or by any judgment which may be rendered in this suit. Under all these circumstances we cannot see how Berkin can be affected or injured by a reversal of the judgment upon the Bowery Mining Company's appeal, and therefore conclude that he is in no sense an adverse party upon whom notice of appeal should have been served by appellant. We therefore advise that the motion of respondents to dismiss the appeal be denied.

## Upon the Merits.

It is not shown, either affirmatively, by sufficient recitals in the record, or otherwise, that it contains all, or the substance

of all, the evidence introduced at the trial of the case bearing upon the errors alleged, and under the uniform decisions of this court we cannot consider the alleged insufficiency of evidence.

Aside from the insufficiency of the evidence alleged, there are but four questions to be considered upon the merits of these appeals, viz.: (1) Does the complaint state facts sufficient to constitute a cause of action? (2) Was time the essence of the option? (3) Was the lease part of the agreement extended by the supplementary agreement of May 9, 1900? (4) What is the effect of a clause in the original contract by which it is to be made void *ab initio* upon failure upon the part of the lessee to perform?

1. As to the sufficiency of the complaint. Appellant's objections to the complaint are as follows: (a) That it is a complaint to restrain the prosecution of a pending action in forcible entry and detainer commenced by the appellant against plaintiffs. (b) That it is a complaint filed to declare and enforce a forfeiture. (c) That the plaintiffs have not done or offered to do equity, in this: that appellant paid plaintiffs $5,000 on the purchase price of the property, and plaintiffs do not allege a return or offer of return of the same.

(a) Is the complaint to restrain prosecution of a forcible entry and detainer suit?

We need not consider whether the complaint states facts sufficient to constitute such cause of action if it does state facts sufficient to constitute a cause of action for any other relief, as the fifth subdivision of the prayer of the complaint is as follows: "That the plaintiffs may have such other and further relief as shall be meet and agreeable to equity and good conscience." This is sufficient to warrant the court in granting any relief to which the plaintiffs are entitled upon the allegations of the complaint and the proof introduced at the trial. (*Leopold* v. *Silverman*, 7 Mont. 266-286, 16 Pac. 580; *Gillett* v. *Clark*, 6 Mont. 190-192, 9 Pac. 823; *Morse* v. *Swan*, 2 Mont. 306-309; *Davis* v. *Davis*, 9 Mont. 267, 23 Pac. 715; *Klein-*

*schmidt* v. *Steele,* 15 Mont. 181, 38 Pac. 827; *State ex rel. Russel* v. *Tooker,* 18 Mont. 540, 46 Pac. 530, 34 L. R. A. 315; Section 1003, Code of Civil Procedure.)

An examination of the complaint discloses that it was filed to quiet plaintiffs' title to the premises in controversy, to remove a cloud therefrom by cancellation of instruments which they say have no validity, and incidentally for an injunction against the prosecution of two suits against them by the Bowery Mining Company for forcible entry and detainer and one for conversion of personal property. There is no doubt but the allegations of the complaint are sufficient as an action to remove a cloud from plaintiffs' title and cancel the contracts of August 15, 1899, and May 9, 1900, to Berkin, under Section 4450 of the Civil Code. (*Wiard* v. *Brown,* 59 Cal. 194; *Angus* v. *Craven,* 132 Cal. 691, 64 Pac. 1091.)

We are of the opinion that it is also sufficient to warrant a decree quieting title of plaintiffs against the adverse claim of the Bowery Mining Company. The complaint alleges that this company is assignee of the Berkin contract, and claims rights thereunder adverse to plaintiffs; but it asks in the prayer that defendants "set forth the nature of their adverse claims, and that the same may be adjudged void." The appellant sets forth a claim other than as assignee of Berkin's contracts with plaintiffs, viz., an option of purchase and a lease of the premises in question between appellant and Berkin by written contracts. This claim is adverse to plaintiffs, and the court is given jurisdiction and authority under the pleadings and Section 1310 of the Code of Civil Procedure to decide upon the validity of this claim. All the complaint is required to allege in such case is that plaintiff is owner of the premises, and that the defendant claims some right adverse to him, without specifying of what such adverse claim consists. (*Castro* v. *Barry,* 79 Cal. 443, 21 Pac. 946; *Montana Ore Purchasing Co.* v. *Boston & Montana C. C. & S. M. Co.,* 27 Mont. 288, 70 Pac. 1114.) It must ask that such claim be set forth, and its merits be adjudicated. It would be absurd to say that plaintiffs, by the setting forth that

the defendant claims adversely under a state of facts and conditions mentioned in the complaint, could preclude the defendant from setting forth any other adverse claim.

(b) As to the plaintiffs' complaint being to declare and enforce a forfeiture.

Appellant's counsel misconceive the purpose of the suit when they make this assertion. Plaintiffs claim that the forfeiture was completed by proceedings taken by them in accordance with the provisions of the contract long prior to the commencement of the suit, and that such contracts are therefore void. They do not ask the court to declare or decree any forfeiture or enforcement of the same, but simply determine whether the acts of the plaintiffs in forfeiting the contracts under their terms have been sufficient.

The language of the Supreme Court of Michigan in the case of *Pendill* v. *Union Mining Co.,* 64 Mich. 172, 31 N. W. 100, is very pertinent and conclusive: "Counsel for defendant further insist that the object of the bill is to declare a forfeiture of an estate for nonperformance of a condition subsequent against the rule that equity will never enforce a penalty or forfeiture. We do not think this is the proper view to be taken of the bill. The bill treats the lease as a void incumbrance, under which the defendant company, by its claims thereunder, clouds the complainant's title. The court is not asked to declare the forfeiture, but to ascertain whether or not a completed forfeiture exists, and, if so, to remove the cloud. The bill does not ask the court to do the thing, but to ascertain whether it has been done, and, if so, to declare its effect upon the title to complainant's property."

(c) As to plaintiffs' offer to do equity.

This contention is based upon the fact that plaintiffs have received $5,000 from appellant, and do not offer to return the same. The record discloses that this money was paid by appellant to Berkin under its contract with him, and not directly to the plaintiffs, and that Berkin paid it to the plaintiffs. There-

fore plaintiffs never have received it from appellant, were not bound to account for or pay it to appellant. Berkin, from whom they received it, would be the only person, if any one, who could demand its return. He does not claim or demand it. But, even if it had been paid by appellant to plaintiffs it would not be entitled to its return under the decision of *Clark* v. *American Developing & Mining Co.,* 28 Mont. 468, 72 Pac. 978.

2.  Was time the essence of the option?

We think it was. This court, in the case of *Clark* v. *American Developing & Mining Co., supra,* entered very fully into the discussion of this question, and came to the conclusion that time is the essence of every contract, whereby an option is given to purchase mining property. The court said: "The contract was unilateral, and by its express terms time was of its essence. There is a decided distinction between an option to purchase, which may be exercised or not by the prospective purchaser, and an absolute contract of sale, wherein one of the parties agrees to sell and the other to buy certain property, the sale to be completed within an agreed time. In the latter case, of course, the mere lapse of time, with the contract unperformed, does not entitle either party to refuse to complete it, and therefore time is not of the essence of the contract. But where the contract is merely an option, generally without consideration, and especially as applied to mining property, of course, as pointed out in the last preceding sections, time is of its essence. The prospective purchaser must act promptly within the time specified, or his right to purchase is gone. Snyder on Mines, Sec. 1378. And see Lindley on Mines, Sec. 839; *Settle* v. *Winters,* 2 Idaho, (Hasb.) 215, 10 Pac. 216; Pomeroy on Contracts, Sec. 387; Fry on Specific Performance, 3d Ed., Sec. 1052."

3.  Was the lease part of the agreement extended by the supplementary agreement of May 9, 1900?

We are satisfied that it was not. The purpose of the contract of May 9, 1900, was simply to extend the time in which to make the later payments provided for in

the contract of August 15, 1899, for a period of six months. It recites: "The granting of above extensions are to apply only to the time payments for purchase as specifically set forth in the original contract of August 15, 1899, and are not to apply on any royalties now due, or which may become due, or otherwise." And again: "In all other respects the original contract of August 15, A. D. 1899, to remain and be in full force and effect." While the option and lease are contained in the same paper, either might have been given without the other, and each might have been given to different parties and by different papers. They are entirely separate and distinct agreements. The option part of the agreement does not give the proposed purchaser the right to the possession of the property at all. It only provides for the sale to the intended purchaser of the property as described in the contract upon the payment of certain sums therein mentioned at certain times. The only reference to the lease part of the agreement contained in the option is that the intended purchaser at the time of making payments shall "have fully kept and performed all of the terms and conditions of this contract and the lease hereinafter given upon said property, to be kept and performed by the said party of the second part in accordance with the true and proper intent and meaning of this contract; * * * but if said party of the second part, his representatives or assigns, shall fail to make any of the said payments when due, or perform any or all of the conditions of this contract and hereinafter described lease to be by him performed, then, upon such failure, this agreement shall be declared void *ab initio* and at an end." By this language the plaintiffs made it the duty of the defendant Berkin (and Berkin made it the duty of the Bowery Mining Company in his contract with that company) not only to make the payments at the time they were due according to this contract, but also to keep and perform the agreements set forth in the lease. The lease part of the agreement might have been for a time much shorter than that allowed for the payment of the purchase price. We cannot conceive any such relation between the lease

and option that an extension of the time of payment of the purchase price under the option would extend the expiration of the lease. But, even if the lease was extended, it became forfeitable by its own terms by nonpayment to plaintiffs of the royalties when due, and it was so forfeited by plaintiffs before commencement of the suit.

4. As to the *ab initio* clause.

This clause is peculiar in its statements, and the words *"ab initio"* were evidently carelessly used; but we find in the contract of May 9, 1900, the following provision, which, in our judgment, modifies this clause, and sets it aside: "Said party of the second part further agrees with the parties of the first part, that any failure that may occur at any time during the life of the original contract and this supplement, by said party of the second part, to fully comply with any of the terms in the original contract, or as modified or set forth in this its supplement, according to their true intent and meaning, or to make the payments for purchase as herein extended and specified, is to cause a complete forfeiture of the original contract, and this, its supplement, to convey and lease." We are clear that the language above quoted is a modification of the *ab initio* clause in the original contract, and makes a failure to pay the money at the time stated and specified in the two contracts a cause of forfeiture of the original contract and the supplement.

After a very full and careful consideration of the record, we are satisfied that the motion to dismiss the appeal made by respondents should be overruled, and that the judgment and order appealed from should be affirmed.

MR. COMMISSIONER CALLAWAY, being disqualified, takes no part in the preparation of this opinion.

PER CURIAM. —For the reasons stated in the foregoing opinion, the judgment and order are affirmed.

*Affirmed.*