LUCINDA JOHNSON and DAVID JOHNSON, Appellants, v. ELECTRIC PARK AMUSEMENT COMPANY.

**Landlord and tenant:** FORFEITURE OF LEASE: WAIVER. A landlord who accepts rents accruing after a breach of the conditions of the lease in this respect, which would justify forfeiture and re-entry, waives the right of forfeiture, although the acceptance of rent accruing prior to the breach would not constitute a waiver.

**Same:** NOTICE OF FORFEITURE: CONSTRUCTION. A lease, as in this case, stipulating conditions with a penalty of forfeiture at the election of the lessor and providing that upon a breach by the lessee of any of the covenants he will without further notice surrender the premises, can not be terminated by mere notice of the election to forfeit; as such a notice merely indicates a purpose to terminate the lease by forfeiture and the relation of landlord and tenant still continues.

**Same:** FORFEITURE: WAIVER. Where, as in this case, the lessor in a lease for a term of years beginning February 1st at an annual rental payable July 1st each year, received the rent for that year in September, and subsequently brought suit for possession of the premises because of failure to pay the rent as stipulated, such payment and acceptance of the rent operated as a waiver of the forfeiture.

**Same:** PLEADINGS: AMENDMENT. The amendment of the petition in this action for possession of leased premises because of the breach of conditions by the lessee, alleging additional grounds of forfeiture but not averring that the same were unknown to the lessor at the time he received rent for a period subsequent to the commencement of the action, were properly stricken.

**Same:** EVIDENCE: PAROL VARIANCE OF WRITTEN LEASE. A lease of land for amusement park purposes beginning February 1st for a term of years at a stipulated annual rental payable July 1st,

made the rent payable for the year and not merely for the summer amusement season; and evidence that the parties understood the premises would be used only during the summer months, the amusement season closing in September, was inadmissible as varying the terms of the written contract.

*Appeal from Black Hawk District Court.*—HON. CHARLES E. RANSIER, Judge.

THURSDAY, APRIL 6, 1911.

ACTION for possession of land resulted in the dismissal of the petition. Plaintiffs appeal.—*Affirmed.*

*Mears & Lovejoy,* for appellants.

*Edwards & Longley,* for appellee.

LADD, J.—Plaintiffs leased to defendant certain land to be used for an amusement park for a term of five years beginning February 1, 1908. The rental agreed upon was "$300 for the year 1908 and $350 per year thereafter, all payable on the first day of July of each year." The lease provided that the premises should not be used for unlawful purposes under penalty of forfeiture at the election of the lessor, and that, upon breach of any of the conditions therein, defendant without notice would surrender the same. The lessee failed to pay the rent July 1, 1909, and on August 21st following the lessor caused to be served on defendant a notice of forfeiture, and that he be given possession on September 7th; such forfeiture being grounded on the breach of stipulation to pay rent and of the condition against the use of the premises for unlawful purposes, it being alleged that intoxicating liquors had been sold thereon and that gambling devices had been in operation. On September 8, 1909, the defendant paid the rent which became due July 1st previous, and on September

10, 1909, this action for the possession of the premises was begun. By way of amendment, plaintiff alleged as other grounds of forfeiture the sale of cigarettes and cigarette wrappers on the premises and the exhibition of obscene pictures, stating that plaintiffs were without knowledge of these violations of law at the time of the notice of forfeiture. This amendment was stricken on motion of deendant. The defendant then interposed a plea of abatement on the ground that the lessors by accepting the rent payable for the year ending February 1, 1910, nearly five months beyond the time of payment, waived the breaches alleged and were estopped from claiming a forfeiture. The defendant demurred to this plea for that (1) the rent had accrued prior to receiving payment; (2) the lease already had been declared forfeited; and (3) the defendant has remained in possession and the payment was of rents earned previously and while the action had been pending. This demurrer was overruled, and plaintiffs answered the plea of abatement by alleging that in executing the lease the parties thereto contemplated "that the payment of rent on July 1st of each year was payment for the summer season of each year," and denied that the rent paid covered a period up to February 1, 1910, and denied that by reason of the allegations of the plea of abatement the action was prematurely brought. Thereupon defendants again demurred for that the facts above stated constituted no defense to the plea, and that it was sought to vary the terms of a written contract by parol. This demurrer was sustained. Thereupon plaintiffs elected to stand on the ruling, and, on motion of defendant, judgment abating the suit was entered. The appeal thereforom presents for our consideration several rulings which will be taken up in the order of their importance.

I.   The rental for the period of one year was payable on the 1st day of July of each year of the term of five years beginning February 1, 1908. The payment of the

rent then, which became due July 1, 1909, on September 8,
following, gave the use of the premises until
February 1, 1910, or nearly five months in
advance of such payment. Did the re-
ceipt thereof by the landlord waive his
right to forfeit the lease because of prior breaches of its
conditions? Any act of the lessor done with knowledge of
a breach of condition by the lessee affirming the existence
of the lease is a waiver of such forfeiture. 24 Cyc. 1360.
Accepting rent which will accrue after the breach of con-
dition contained in the lease as this recognizes the continu-
ing force of that instrument is a waiver of the right to
declare a forfeiture and to reenter, providing the lessor
in receiving the rent does so with knowledge of the par-
ticular breach. On the other hand, if the rent received
by the landlord accrued prior to the breach of condition
in the lease, there is no waiver, for no more has been paid
than the landlord might have exacted, even though the
lease were forfeited.

1. LANDLORD
AND TENANT:
forfeiture
of lease:
waiver.

These rules are thus stated in 2 Coke on Littleton (1
Am. from the 19th London Ed.) 211b, section 341: "If
the feoffer had distrained for the rent for nonpayment
whereof the condition was broken, he should never enter
for the condition broken; but. he may receive that rent
and acquit the same and yet enter for the condition
broken. But if he accept the rent due at a day after,
he shall not enter for the condition broken because he
thereby affirmeth the lease to have and continue." So in
Greene's case, 24 Eliz. (1 Cro. Eliz. 3): "It was clearly
resolved that the bare receipt of the rent after the day
was no bar, for it was the duty due to him (the land-
lord), but a distress for the rent or a receipt of the rent,
due at another day, was a bar; for these acts do affirm
the lessee to have lawful possession." See 2 Tiffany on
Landlord and Tenant, 1387; 24 Cyc. 1361; 18 Am. &

Eng. Cyc. Law (2d Ed.) 382; 2 Taylor's Landlord and Tenant, 499.

These rules are not questioned, but plaintiff argues that, as all the rent paid was due July 1st, receiving it, although covering a period in the future, did not constitute a waiver of the several breaches alleged. The theory on which the waiver in such a case is based is that, by receiving rent payable for the use of the premises in the future, the landlord acknowledges the binding force of the lease for a like period, and it is not perceived that the circumstances that only a portion of that paid is for future occupancy can obviate the application of the rule. Had the rental been payable by the month, the recept of a month's rent in advance would have waived any breach of condition in the lease then known. The act of receiving the rent recognized the existence of the lease, and assented to its continuance for the period for which the rent was paid. To hold otherwise, and to permit the landlord to recover possession of the premises when he has already received from his tenant the rents stipulated, would be inequitable and unjust. *Gomber v. Hackett*, 6 Wis. 323 (70 Am. Dec. 467). Suppose the rent for a month were payable in advance on the first day of the month, but should be received at some time during the month; would this be waiver of known breaches because of the recognition of the continued existence of the lease? The Supreme Court of Minnesota so held in *Kenny v. Seu Si Lun*, 101 Minn. 253 (112 N. W. 220, 11 L. R. A. (N. S.) 831). The principle involved was precisely like that in the case at bar. In *Barber v. Stone*, 104 Mich. 90 (62 N. W. 139), the monthly rent of $7 fell due September 1, 1892, and there was $4.50 back rent. On the following day the tenant paid $8.50, and the landlord, after waiting several days, began summary proceedings for possession. In holding that the action could not be maintained the court, speaking through Hooker, J., said:

The fact that rent was payable in advance does not make the actual use of the premises any the less the consideration for the payment. . The landlord by receiving the monthly payment recognizes the right of his tenant to occupy for the succeeding month.   He is under no obligation to receive less than the monthly payment.   What excuse is there for his doing so, unless he expects to give something in return ?   By the terms of the lease a failure to pay rent gives an immediate right of reentry without recourse to legal proceedings.   *Pendhill v. Mining Company,* 64 Mich. 179 (31 N. W. 100).   But if the landlord receives a portion of such rent, although not in full compliance with the terms of the lease, may he still reenter claiming the forfeiture, and at the same time retain money, the only consideration for which is future occupation ?   In such case, we think that the receipt of the money is a recognition of the right to occupy the premises for the period which such sum would cover, to say the least, and we do not see how the case is different where the payment is made after notice, except as to amounts actually earned.

It would seem but just that the tenant should be permitted to remain in possession for the period covered by the rent paid, unless this might be forfeited by subsequent breaches.   As said in the last case cited, it would be "inconsistent for a landlord to assert a forfeiture and termination of a lease which he does by his notice and action, and at the same time take and retain money, his only right to which is predicated upon the continuance of the tenant's right to occupy under the lease."   In that case it was suggested that the payment of four-sevenths of the monthly rent entitled the tenant to occupy four-sevenths of a month and is peculiar in that respect.   That some difficulty might be involved in determining what portion of the year's rent defendant should have paid for the use of the premises up to the time of the opposed reentry can not obviate the application of the principle that receiving payment for such use in the future acknowledged

that the lease should continue. Many of the text-books and decisions in stating the rule speak of receiving rent which has accrued as not constituting a waiver. But the reason for the rule indicates clearly that the word "accrued" is employed as synonymous with "earned." In Gudgel v. Sutherland, 117 Iowa, 309, it was so regarded in construing a statute, and the lexicographers justify such use of the word in reference to rent defining it as "Added as increase; accumulated as interest or rent." The true principle is that one may not receive unearned rent whether due or to become due, and at the same time deny the right to enjoy the use for which such rent has been paid.

It is contended, however, that the lease had been terminated by the notice of election to forfeit prior to receiving the rent and for this reason there was no waiver.

2. SAME: notice of forfeiture: construction. Formerly, actual entry seems to have been essential to the enforcement of a forfeiture, but under modern methods this is not essential. It seems now to be sufficient that the landlord clearly, unequivocally assert by word or act his intention that the tenancy shall come to an end as by instituting a suit in ejectment or subletting. 2 Tiffany, Landlord and Tenant, 1404. And the terms of a lease are often such that it may be terminated by some lesser emphatic assertion of the landlord's present right to the property. It seems unnecessary in view of the provision of the lease now under consideration to review the authorities on this question, for the lease before us merely stipulated conditions "under penalty of a forfeiture of all his (lessee's) rights under this lease at the election of the party of the first part; and at the expiration of this lease or upon a breach by said lessee of any of said covenants herein contained he will without further notice of any kind quit and surrender" the premises. Plainly enough to terminate the lease something more than the mere notice of election

of the lessor was essential. Such notice no more than indicated the purpose by forfeiture to terminate the lease. By its terms the election does not have that effect, and therefore the relation of the landlord and tenant can not be said to have entirely ceased prior to the receipt of the rent.

Plaintiffs contend that, inasmuch as the trial occurred after February 1, 1910, payment of rent in advance until that date ought not to be treated as a waiver of the breaches alleged. In support of this proposition, authorities are cited holding that receipt of rent after action for possession has been begun will not waive forfeiture, for the tenant is liable for the use and occupation for all the time he is in possession, and, if the landlord is willing to receive and the tenant pay the contract rental, this is but an adjustment of liability for the use and occupation. *Cleve v. Mazzoni* (Ky.) 45 S. W. 88; 2 Tiffany on Landlord and Tenant, 1390; 2 Taylor on Landlord and Tenant, section 497. Manifestly these are not in point for forfeiture had not been effected by the termination of the lease, nor are decisions in point holding that payment of rent up to the time the notice of forfeiture has fixed for the time of its termination. If the breaches were waived in fact, they are not reinstated by reason of the delay in proceedings to obtain possession. But, even if the law were as contended, the dates of the respective rulings, save that on the motion for judgment, are not disclosed by the record, and, to uphold the orders sustaining the demurrers, the presumption must prevail that they were entered prior to the expiration of the period for which rent was paid. The court rightly ruled that the breaches of conditions were waived by receiving the rent for the entire year.

II. The amendment alleging grounds of forfeiture other than those mentioned in the petition were properly

3. SAME: forfeiture: waiver.

stricken for that pleading did not aver that such grounds

**4. SAME: pleadings: amendment.** were unknown to plaintiffs at the time of receiving the rent; it alleging want of knowledge at the time of serving the notice of forfeiture which was seven or eight days previous.

III.  In answer to the plea in abatement, plaintiffs alleged that in executing the lease the parties thereto contemplated the use of the premises "for the purposes of an amusement park and that such use should

**5. SAME: evidence: parol variance of lease.** continue during the summer months and that said park season would close on or about the first of September of each year," and, in substance, that the rent stipulated was for the summer season.  The lease stipulated that defendant agreed "to pay . . . the rent for said premises as follows: $300 for the year of 1908 and $350 per year thereafter, all payable on the first day of July each year."  Plainly the rent was payable for the year and not for the summer, and the answer but sought to vary a written instrument by pleading an inconsistent parol contemporaneous understanding.  Manifestly this was not permissible, and the court rightly so held in sustaining the demurrer.—*Affirmed.*