F. F. FARINGER, Appellant, v. M. VAN DE HOEF, Appellee.

**LANDLORD AND TENANT: Relief from Forfeiture.** Equity will
1  relieve from the forfeiture of a lease for doing exactly what the
parties had agreed on, but which, by mutual oversight, had
been omitted from the lease.

**EVIDENCE: Parol as Affecting Writing—Avoidance of Forfeiture.**
2  Parol evidence is admissible, on the issue of the forfeiture of
a lease, to show what matters were, by mutual mistake, omitted
from the written lease.

**LANDLORD AND TENANT: Waiver of Forfeiture.** A lessor who
3  agrees with his tenant as to the amount of damages which will
fully compensate him for a breach of the lease by the tenant,
and accepts payment from the tenant, with the express or im-
plied understanding that such payment settles all their diffi-
culties, may not thereafter base a forfeiture of the lease on
such breach.

*Appeal from Sioux District Court.*—C. C. BRADLEY, Judge.

FEBRUARY 16, 1920.

ACTION to restrain defendant from entering on certain
land or interfering with plaintiff's possession thereof, and
to have the injunction made perpetual, and for other relief.
On hearing, the petition was dismissed, and plaintiff ap-
peals.—*Affirmed.*

*Hatley & Van de Steeg,* for appellant.

*Anthony Te Paske* and *Klay & Klay,* for appellee.

LADD, J.—I. The plaintiff, being the owner of two
quarter sections of land, sold one of them to defendant and
his father-in-law, Bleinberg, and, on April 3, 1919, leased the
other to defendant for a term of two years, beginning
March 1, 1920, at the annual rental of $12 per acre. The
lease contained, among other provisions, the following:

"First. All manure on the farm up to March 1, 1920,

must remain and be hauled on this farm before November 1, 1919. * * *

"Second. If the second party shall fail to cultivate said premises as herein agreed, or shall fail to keep any of the covenants contained in this lease, or shall assign this lease, or underlet said premises, or any part thereof, then this lease shall, at the election of the first party, be null and void, and the first party, or his legal representative, shall have the right to take possession, using such force as may be necessary, with or without process of law, and all damages growing out of the failure to perform any of the covenants of this lease shall be added to and become a part of the rent recoverable as rent. * * *

"Third. The second party shall haul out and distribute upon the poorest soil upon said premises all the manure and compost suitable to be used."

About August 6, 1919, defendant hauled from the leased premises 27 loads of manure, and spread the same on the land he had purchased. Because of this, plaintiff claims to have elected to treat the lease as "null and void," under the clause quoted, and to retain possession. That a forfeiture, when the lease provides for re-entry on condition broken, may be enforced by the lessor, may be conceded; but this does not obviate that other rule that relief against forfeiture may be granted for mistake, or justifiable reliance on the conduct of the lessor, or on waiver of forfeiture. 1 Pomeroy on Equity Jurisprudence (4th Ed.), Sections 451, 454, *et seq.*

1. LANDLORD AND TENANT: relief from forfeiture.

II. The defendant, in hauling the manure on his own land, breached the lease; but it ought not to be said, from the record before us, that he so did willfully. The plaintiff told him where to spread the manure, but it is deducible from the evidence that defendant understood him to have reference to the two thirds thereof, which was to be left on

the leased premises. Bleinberg kept tally of the number of loads hauled, and more than two thirds of the manure remained on the premises. Plaintiff testified that, when he leased the land, defendant suggested that he would haul some straw thereon; that he should have part of the manure; and that he (plaintiff) said that at least two thirds should remain on the land, and that he finally concluded to arrange the matter later. On cross-examination, he swore that:

"It was provided in the lease that two thirds of the manure should go to my place, and the one third was left unsettled. That should depend on circumstances. Q. But that was part of the agreement, and your understanding was that the manure made in 1921, the second year of the lease, he could leave there, without hauling it off? A. Yes, sir. Q. Well, I said you didn't put that in the lease. A. No, sir."

The witness further related that, when he first talked to defendant about hauling the manure, the latter contended that he was entitled to one third thereof, and that he was to haul the manure in 1919 and to leave the manure in 1921, and that he was entitled to one third of the manure; that:

"Nothing was said in the lease about Van de Hoef's right to leave the manure made in 1922 on the place; that was the agreement between us on the 3d of April, when we made the lease, but it was left out. I can't say whether it was an oversight, forgotten, or what. * * * Q. Now, you say you wanted this lease changed because you didn't want them to have any of the manure made on the place? A. Yes, sir. Q. And you had agreed in this lease to give them one third of it and to keep two thirds for yourself? A. Conditionally. Q. You didn't put any conditions in the lease? A. No, sir, but I was to have two thirds of it."

This evidence was drawn out without objection, and was fully corroborated by the evidence of the defendant and

Bleinberg as to the agreement that "two thirds should stay on the farm, and we could have one third;"

2. EVIDENCE: parol as affecting writing: avoidance of forfeiture.

and they swore that this was agreed to unconditionally, and that both supposed that the lease so provided. This last evidence was objected to, for that, as was contended, it tended to vary the terms of the written lease, and whatever was said was merged therein. The objection was not tenable; for the evidence was not introduced for the purpose of modifying the language of the lease, but to show that the agreement that defendant was to have one third of the manure accumulated during the term, and might haul that thereon in 1919, in lieu of any that might accumulate during the second year of the term, was omitted by mutual mistake. We entertain no doubt that such was the understanding; that there was no condition such as plaintiff mentioned, which was evidently an afterthought. This is the more apparent from the fact that, immediately after plaintiff, with Bergsma, called, and tendered defendant the notes he had executed for rent, and demanded the surrender of his copy of the lease, the latter consulted a lawyer, and learned, for the first time, that the lease contained no provision allowing him to haul to his own premises one third of the manure. That a court of equity would reform a lease on such a showing, there can be no doubt; and, if so, it is equally certain that such a court will relieve against a forfeiture based on doing precisely what had been agreed upon, but which, through mutual mistake, had been omitted from the lease. See note to *Maginnis v. Knickerbocker Ice Co.*, 112 Wis. 385 (69 L. R. A. 833, 849).

III. But this is not all. One Meines accompanied the defendant and Bleinberg, to aid them in adjusting defendant's differences with plaintiff. The latter swore that

Meines informed him that defendant admit-
**3. LANDLORD AND TENANT: waiver of forfeiture.** ted he had been wrong in hauling the ma-
nure, and wanted to make it right, and
spoke of getting the farm again; that, after
some talk, he (plaintiff) responded that "we will settle the
manure question first, and then we will talk about the farm
afterwards;" whereupon $122 was agreed to be the value
of the manure, and for such amount, defendant gave him
a check; that he refused to write on the check, at Blein-
berg's request, "settled in full," because the check was for
the manure alone; and that he then said, "You can't have
the place back unless you sign a new lease and a new
contract with provisions in it;" that Meines wanted to
know "why I wanted a new contract," and, upon hearing
the explanation, Bleinberg became angry, and left, and the
defendant soon followed; and that, in company with two
others, he called on defendant, three days later, and ten-
dered to him the rent notes, and demanded the surrender
of the lease; but that defendant declined to talk.  On the
other hand, Meines' version of the affair was that, in the
conversation, he explained that defendant admitted that he
had done wrong, and wanted to make it right, and pay the
damages; that, at first, plaintiff didn't want to listen; that
he would rather have the contract voided; but that, after
Meines had talked 20 or 30 minutes, telling him, "if he was
a good American citizen, he ought to give the boys another
chance," that they made a mistake, but they didn't know
any better, and that they couldn't read American, and after
he talked to him about half an hour, he came to this con-
clusion: "Well, I guess I better,—I guess we better put a
value on the manure, and let them pay for it;" whereupon
he (Meines) remarked that it was the only thing to do;
that they then agreed upon the value of the manure, and
Meines finally said to defendant, "I guess you better write
a check for it, for the full amount, and be done with it;"

that, after they agreed, Mr. Faringer invited them into the house, and they "talked very friendly, and Mr. Van de Hoef pulled out his check book and threw it on the table, and Mr. Faringer wrote out a check, and Van de Hoef signed it, and then I asked Mr. Faringer to put on the back of the check, 'settlement in full,' in regard to the manure question, and I don't know if he completed that or not, but I saw him write something on it." The witness further explained that plaintiff then said, "I want the contract changed now," to which the witness responded that he "thought it was a little too late, because we got a settlement in full for the mistake the boys made. That was all agreed to, and we didn't talk so very much more about it, because we were satisfied we had paid for what we had done." On cross-examination, the witness was asked:

"Didn't Mr. Faringer say to you, 'We will settle the manure first, and then we will see about the farm afterwards?' A. No, sir. Q. At no time? A. At no time. Q. What was you trying to get him to do? A. To settle the mistake of the manure, and for them to say what was right. Q. And he told you that, when you got the manure question settled, then you would talk about making a new contract? A. I didn't hear that."

The defendant testified that the plaintiff did not say he wanted to change the contract until after the check had been given. Undoubtedly, plaintiff indicated to Meines, when he first began to talk, that he wanted to have the contract voided; but, without reservation, proceeded to estimate the value of the manure, and received payment therefor, which covered fully all the damage he had suffered by reason of the breach of the condition in the lease. Defendant paid for the manure in the belief that that was all that was required, and Meines' statement that, "if the old man had not been in such a hurry, I would like to see the thing finished," is not explained, but doubtless referred to

plaintiff's contention that another lease should be executed.

The law seems to be well settled that, where damages resulting from a breach are paid in full, without impairing the obligations or benefits under the lease in any manner, such payment will be deemed a waiver of the breach, and forfeiture may not be insisted on. True, as contended, forfeiture will not be relieved against where the condition is merely collateral, and the damage consequent on the breach is not liquidated, or may not be ascertained. See 3 Story on Equity Jurisprudence (14th Ed.), Section 1734 *et seq.* But this does not obviate the rule that the lessor may agree upon the damages to be paid, and that receipt thereof will waive the forfeiture. In a note to *O'Connor v. Timmermann,* (Neb.) 24 L. R. A. (N. S.) 1063, will be found a collection of cases in which the forfeiture was waived. See, also, *Little Rock Granite Co. v. Shall,* 59 Ark. 405 (27 S. W. 562); *Blank v. Independent Ice Co.,* 153 Iowa 241. Here, the parties met, the day after plaintiff had first called the defendant's attention to the fact that the written lease did not permit him to haul any of the manure on his land; and, the following day, the parties entered into an agreement fixing the amount of the damages, which defendant then paid, and plaintiff received. Though plaintiff contends that this was done with an understanding that the lease was forfeited, he is contradicted by three witnesses, and we are not inclined to interfere with the conclusion of the trial court that the latter were the more credible, and that the amount agreed upon was for the reparation of any wrong done. That the value of the manure taken away would amount to complete reparation can make no difference, if the parties really intended that such payment should reimburse the defendant for all damages consequent upon the breach of the condition. Had the payment been for the manure hauled away only, and so understood by the parties, and without thought of adjusting of differences,

generally, the receipt of payment therefor probably would not have amounted to a waiver of the right to forfeit the lease, for that the tenant, under the terms of the lease as written, was. liable for the value of the property taken, even though forfeiture were effective. See *Johnson v. Electric Park Amusement Co.,* 150 Iowa 717. The evidence, however, was such that the court might well have found that payment was in reparation of all consequences of the breach. Undoubtedly, plaintiff said something about treating the lease as voided; but, realizing that he might not obtain payment for damages while insisting on forfeiture, he proceeded with negotiations, and, in his attempt to obtain money for the manure, lost sight temporarily of the large increase in the rental values sought (he had leased the land before the trial at $20 per acre), and settled with the defendants, with good reason to suppose that they were acting with the understanding that they were adjusting all differences between them. See Section 4617 of the Code. We discover no error in the record, and the decree of the district court is—*Affirmed.*

WEAVER, C. J., GAYNOR and STEVENS, JJ., concur.