BONHAM v. NORTHWESTERN NATIONAL INSURANCE CO.

1. CONTRACTS—FORFEITURES NOT FAVORED IN LAW OR EQUITY— STRICTLY CONSTRUED—MUST BE PLAINLY PROVEN.

Forfeitures are in their nature penalties or pecuniary punishment, not favored either in law or equity; and the provisions on which they are based by contract are to be strictly construed and the facts supporting them plainly proven.[1]

2. INSURANCE—HOME VISITED WEEKLY NOT "UNOCCUPIED."

Where insured had no intention of abandoning her home, but kept it up, visiting it once or twice a week, it was not unoccupied within the meaning of a clause in a fire insurance policy rendering it void if unoccupied for more than six successive months, although insured was in the meantime employed for an uncertain period, but exceed-

[1]Contracts, 13 C. J. §§ 512, 533.

ing six months, as a housekeeper in a home about a mile away.[2]

Error to Bay; Houghton (Samuel G.), J.   Submitted January 15, 1925.   (Docket No. 104.)   Decided April 3, 1925.

Assumpsit by Julia Bonham against the Northwestern National Insurance Company on a policy of insurance.   Judgment for plaintiff on a directed verdict.   Defendant brings error.   Affirmed.

*Selwyn A. Lambert,* for appellant.

*Hubert J. Gaffney,* for appellee.

STEERE, J.   Plaintiff brought this action to recover on a fire insurance policy issued November 19, 1920, by defendant on her house and contents located in Bay City, Michigan.   The amount of the policy was $500.   It was in force at the time the fire occurred, on October 16, 1923, unless rendered void by the premises being unoccupied at the time of the fire in violation of its terms.   It is conceded the amount of loss was equal to the face of the policy.   Under its plea of general issue defendant gave special notice that the policy "was void and not in force on the premises when same were damaged by fire because of said premises having been unoccupied for more than six successive months prior to said fire without permission," etc.   The case was tried before a jury. At conclusion of plaintiff's testimony both parties rested and asked for a directed verdict.   After hearing arguments the court directed a verdict in favor of plaintiff and entered judgment thereon.

The policy contains the following provision:

"Permission granted for the within described

[2]Fire Insurance, 26 C. J. §§ 259, 262.

premises to be and remain vacant for a period not exceeding sixty (60) days at any one time, the term 'vacant' being construed to mean an empty building void of personal habitation; or to be and remain unoccupied for a period not exceeding six (6) months at any one time, the term 'unoccupied' being construed to mean a building that is entirely furnished, but with personal habitants temporarily absent."

The insured house was a one-story, shingle roof, frame building.   At time of the fire plaintiff was a widow 66 years of age and had owned these premises for many years, living there with her husband until he died in the spring of 1922.   After his death her nephew and wife came from Detroit and lived there. The nephew soon died and his wife continued to live in the house for some time thereafter.   Plaintiff's financial circumstances were such that in September, 1922, she found employment as a housekeeper for a Mr. Blossy who resided on Erie street in Bay City about a mile from her home.   Her nephew's wife continued to occupy plaintiff's home until about Christmas, 1922, when she returned to her former home in Detroit, turning over the only key of the house to plaintiff before she left.

Plaintiff thereafter retained possession of the place, visited it weekly or oftener, carried the key and kept her furnished home intact so that she could be free to go there at any time and use it as she wished. A few days after her nephew's wife left she went there, packed up and put away some fruit, shut off the water, saw that everything was all right and locked the house securely when she went away.   From that time she regularly returned once a week or more to look after and care for her home.   Her employment was not for any definite period and she was paid weekly.   Her reasons for keeping possession of the place and visiting it weekly or oftener were:

"That was my home.   I thought if I was out of

a place I would go home.    I would have a home to go to."

The time she spent there on the occasions of her return varied.    Sometimes she would go in, look around to see if everything was all right, sit down for a time, then lock up and leave.    On other occasions she remained longer.    She told of spending the night there on three different occasions, once in the spring when she went there to unpack her fruit and attend to other matters, remaining over night as she said, "because I had too much to do."    She stayed there all day and all night again during the summer, and there was no six months period in which she did not spend the night there.    The Friday before the fire (on Monday) she was there all day and all night, during which time she occupied herself "cleaning up the house and making up beds, and blacking the stove, and doing everything."    All her furniture, household effects and best clothing were in their places in her house.    She only took with her to her place of employment such clothing as she "had to have to get along with."    Of this and of the times she returned to her home she was asked and answered as follows:

"*Q*. What was the greatest length of time that you recall that you were not in this house for any length of time—when you weren't there?

"*A*. Well, I was there every week, twice a week, once and twice a week, every week.

"*Q*. So then the greatest length of time would be one week, is that what you mean, that intervened?

"*A*. But during the week I would go there, sometimes on Monday, Tuesday, or sometimes Sunday, and twice a week sometimes, if it ain't storming.

"*Q*. Did I understand you to say that your clothing was left there?

"*A*. Yes, all my best clothes were there.

"*Q*. And were they in the fire?

"*A*. Yes, sir."

The evidence clearly shows that plaintiff had no intention of abandoning her home, but was keeping it up, watching, caring for and treating it as her permanent place of residence where she would and did remain, except as her uncertain employment demanded her absence.    The undisputed testimony showed there was no period exceeding six months *at any one time* when her entirely furnished home was not for a longer or shorter time actually occupied by her.    But a few days before the fire she occupied it as her dwelling place both day and night, busying herself with household duties.

Forfeitures are in their nature penalties, or pecuniary punishment, not favored either in law or equity.    The provisions on which they are based by contract are to be strictly construed and the facts supporting them plainly proven.

Defendant has not borne the burden of establishing that this policy was forfeited either by vacancy or nonoccupancy of the property for the period of six months at any one time as prescribed by the policy. This case is quite similar in facts and controlled in principle by *Stupetski* v. *Insurance Co.*, 43 Mich. 373 (38 Am. Rep. 195), and *Hill* v. *Insurance Co.*, 99 Mich. 466.

The judgment will stand affirmed.

MCDONALD, C. J., and CLARK, BIRD, SHARPE, MOORE, FELLOWS, and WIEST, JJ., concurred.