KEYWORTH *v.* WIECHERS.

SAME *v.* MORAINE LAND CO.

ON REHEARING.

MINES AND MINERALS—OPTIONS—FORFEITURES.

> Decree giving plaintiff title to lands in dispute excepting one-half of the oil, gas and mineral rights therein, holding that instruments pursuant to which defendants made advancements of substantial sums constituted something more than an option and refusing to enforce forfeiture of defendants' rights is reversed.

POTTER, C. J., and NORTH and WIEST, JJ., dissenting.

Appeal from Midland; Hart (Ray), J. Submitted June 8, 1934. (Docket No. 96, Calendar No. 37,875.) Decided December 11, 1934. Submitted on rehearing August 13, 1935. Decided on rehearing October 31, 1935. Rehearing denied December 10, 1935.

Separate bills by Mina B. Keyworth against William F. Wiechers and Moraine Land Company, a Michigan corporation, and against Moraine Land Company and Chemical State Savings Bank to establish title to certain oil, gas and mineral rights and for other relief. Cases consolidated. From decree rendered, plaintiff appeals. Reversed on rehearing.

*Charles H. Goggin, Chester E. Morris* and *Shields, Silsbee, Ballard & Jennings,* for plaintiff.

*Penny & Clark* and *James E. Ryan,* for defendants.

## On Rehearing.

Fead, J. Upon re-examination of the case on rehearing, I find myself unable to agree fully with any of the other opinions. The facts appear in the original report of the case, *Keyworth* v. *Wiechers,* 269 Mich. 687, but certain specific and undisputed facts properly may be called to mind:

1. An essential modification of the original Wiechers contract was to release him from personal liability for the purchase price and give him the option to make payment or not, as he pleased.

2. Plaintiff claims the benefit only of such payments as Wiechers and the Moraine Land Company made before default and forfeiture. She offers, and must pay, the balance of her contract with the bank, now owned by the Moraine Land Company. The benefit she seeks is only the same which accrues to all vendors when they forfeit land contracts.

3. The Moraine Land Company paid $500 and interest on the payment of $1,000 and interest due in November, 1931, and obtained extension of time to pay the balance to January 15, 1932. The notice of forfeiture was served December 18th. The contracted 90-day period of grace to cure the default expired March 18th. Defendants' attorney wrote plaintiff's attorney on December 24th stating that the balance of principal would be paid January 15th. It was not paid then nor later. On March 9th defendants' attorney wrote plaintiff's attorney asking for statement of the amount necessary to adjust the contract. Plaintiff's attorney replied March 14th. No adjustment was had nor payments made either to plaintiff or the bank before March 18th.

4. There is no testimony that before March 18th the Moraine Land Company had any negotiations with the bank to pay the contract in full or purchase its title. The earliest dates appearing in the record indicating such negotiations are April 15, 1932, the date of a draft, and April 8th, the date of the deed from the bank to William E. Schauppner. There is no testimony of prior negotiations. The deed was not paid for nor delivered until November 30, 1932, after this suit was commenced. The title was later conveyed to the Moraine Land Company.

5. There is no testimony of a cloud having appeared on the title or been suggested until June, 1932. The claimed cloud was the Freeman oil lease, given by an ancient owner of the land but then a stranger to the title. There is no evidence that the lease was mentioned or taken into consideration between the bank and the purchaser of the original vendor title, or that it delayed or affected negotiations except the isolated fact that $50 was paid the Freemans and they gave a quitclaim deed to

Schauppner, dated December 1, 1932, but not acknowledged until January 24, 1933.

6. The negotiations between the bank and the Moraine Land Company for deed were not disclosed to plaintiff, nor did she know of them until after the deed had been delivered. Plaintiff never consented to the negotiations nor transfer. The deed from the bank to Schauppner was made subject to plaintiff's contract and the taxes.

7. There are two vendors involved who must not be confused, the bank in the contract to plaintiff and the plaintiff in the contract to Wiechers.

8. There is no testimony that in purchasing the original title from the bank in the name of a third party the Moraine Land Company purported or pretended to the bank, to plaintiff, or in its own mind, to purchase in fulfillment of or under the authority of the Wiechers contract.

9. There is no evidence of waiver of strict time of payment under the modified contract. On the contrary, plaintiff gave notice of forfeiture at once after she discovered the first default in payment.

10. After the default and before the period of grace expired, plaintiff made contract with others to finance her contract with the bank, subject to the default not being cured, and in February, 1933, completed the arrangement, by new contract, and obtained the money to make tender of the purchase price to the bank and Moraine Land Company.

I cannot view the contract between plaintiff and Wiechers as an option because, under the original contract, Wiechers took a vested vendee interest in real estate (gas, oil and minerals), which was continued and confirmed, not divested, by the amended agreement; by the express terms of the supplemental contract, Wiechers had "an interest in said

property'' which would remain in him until ''forfeited'' by election and affirmative action of plaintiff; and there can be no doubt that the parties intended that, had any gas, oil or minerals been produced from the land while the contract was in force, Wiechers would have been entitled to one-half of such production as would have accrued to plaintiff, under her outstanding oil lease or otherwise. These positive incidents of conveyance of real estate are wholly inconsistent with the effect of an option and must preponderate, in establishing the character of the contract, over the personal privilege of Wiechers to pay or not at his pleasure. The agreement was something more than an option.

However, specific designation of the agreement as an option or land contract is unnecessary to decision, may confuse the issue, as it already has done, and might afford a vexatious precedent. The point of the case is whether the forfeiture of the contract was valid and effective. The procedure for forfeiture was set up in the contract. The law of options is immaterial to the point in issue unless it would justify us in brushing aside the contract provisions as to notice of forfeiture and grace to cure default and in holding that forfeiture automatically followed failure to pay on the due date regardless of such provisions. No one does, or could, so contend. The law of land contracts is immaterial to the point unless it would afford Wiechers or his assignee greater rights or privileges against forfeiture than the contract provides. The most liberal protection against forfeiture which the law of land contracts affords a vendee is that, where time is not of the essence of the contract and where the vendor has waived strict performance, the vendor, in order to terminate the contract, must give the vendee notice of forfeiture and

accord him a reasonable time thereafter to perform. The contract at bar is more liberal to the vendee than the law of land contracts would be because, in view of the small amount of the default and the want of showing of excuse for failure to pay it, 90 days of grace after notice was a longer time than a court would have been justified in holding reasonable; and, moreover, the record contains no evidence of waiver of strict performance of the final agreement by plaintiff.

Consequently, the issue must be determined upon the contract as made, regardless of the name by which it is called.

Two suits, commenced by plaintiff, consolidated on stipulation, are involved. The first bill, filed against Wiechers and the Moraine Land Company before the latter had obtained the deed from the bank, in substance prayed for decree enforcing the forfeiture. The second, against the bank and the Moraine Land Company, prayed conveyance to plaintiff of the original bank vendor title, upon payment of the balance of her contract with the bank. Obviously, plaintiff is entitled to decree for such conveyance, subject to any rights of the Moraine Land Company under the Wiechers contract. Giving the broadest construction possible to the pleadings and allowing all imaginable amendments, the status of the contract depends upon (1) whether the forfeiture was valid, and (2) whether, if valid, the Moraine Land Company has made out an equitable case for relief from the forfeiture.

Ordinarily, a court of equity will not aid in enforcing a forfeiture but will dismiss the bill and leave the party to his remedy at law. However, the rule is not hard and fast but, in some cases, equity will recognize a valid forfeiture and grant appropriate relief. *Negaunee Iron Co.* v. *Iron Cliffs Co.,* 134

Mich. 264; or it will inquire whether or not a forfeiture has occurred, declare the fact, and, thereafter, proceed in the particular case as the fact is found. *Miller* v. *Steele,* 146 Mich. 123; *Pendill* v. *Union Mining Co.,* 64 Mich. 172; *Lozon* v. *McKay,* 203 Mich. 364.

"It is true equity dislikes to adjudge a forfeiture and as a rule will do so only when no other adequate remedy is at hand, but where parties have, by lawful contract, expressly provided for a forfeiture, equity is not squeamish about granting what they have agreed to." *Village of Grandville* v. *Railway Co.,* 225 Mich. 587, 594 (34 A. L. R. 1408).

On the other hand, the jurisdiction of equity to relieve from a forfeiture on equitable grounds is undoubted. But relief will be denied when the default was the result of gross negligence or wilfulness. 21 C. J. p. 104.

The record discloses no equities running to defendants to justify decree setting aside the forfeiture or relieving from it.

The project was an ordinary and common oil speculation. The parties were *sui juris* and dealt at arm's length. If there was any inequality, Wiechers was dominant because he furnished the money, dictated the terms of the transaction and had the greater experience in oil speculations.

Wiechers defaulted in the original contract. The supplemental agreement was drafted by his attorney and was all to his advantage. It relieved him of personal liability, afforded him extraordinary security against forfeiture and was imposed upon plaintiff without giving her an opportunity to submit it to her own counsel, as she desired to do.

The record admits of no other inference than that the failure of the Moraine Land Company to pay the

$500 balance at the due date in November, 1931, or within the 90-day period of grace after notice of forfeiture, was intentional. The Moraine Land Company offered no excuse for the nonpayment, either to plaintiff or the court, made no claim in the evidence that the failure was due to ignorance, inadvertence, misunderstanding as to time, place or amount of payment, inability to pay, or other reasons ever recognized by the courts as raising equities justifying relief from forfeiture.

Of course, the negotiations of the Moraine Land Company, after the forfeiture became effective (if it did), to purchase the original vendor title from the bank, could not affect the validity of the forfeiture nor reinstate the contract. The deed merely put the Moraine Land Company into the shoes of the bank. Nor did such negotiations nor the acquisition of title raise equities in defendant company. At no time before February, 1933 (after plaintiff had obtained the money elsewhere to pay the balance of her bank contract price, had pledged her oil rights therefor and had made tender to the bank and Moraine Land Company and demanded deed), did the company notify her of the negotiations, intimate to her that it was taking title for their mutual benefit, recognize any obligation to her in connection with the deed, nor claim to her that it had any rights under its contract with her. Nor did any representative of the bank or Moraine Land Company or any other person testify that the purchase had been made in pursuance of the Wiechers contract with plaintiff or for the latter's benefit or otherwise than the inferences indicate, i. e., to give the Moraine Land Company an advantage over plaintiff. Nor, to briefly exclude other claims now made, was there any testimony that the Moraine Land Company began the negotiations with the bank

before the 90-day grace period had expired; nor that the negotiations were delayed by the Freeman lease, which in fact did not appear until June, 1932, and was a mere interloper conveyance. The assertion of such reason for delay in a letter from the Moraine Land Company to plaintiff in February, 1933, is not evidence of the fact.

The claim of defendant for special consideration on the ground that Wiechers and the Moraine Land Company had provided plaintiff with substantially all the payments she had made on her contract with the bank is not sound in fact nor tenable in law. Plaintiff had paid taxes of about $1,650 from the proceeds of the Wilford and Carey loan and the payment of $1,501.67 in 1930, while negotiated for her by Wiechers, was an advance from the Pure Oil Company to plaintiff and was charged against the rents and royalties under her lease with it. So her total payments were about $3,150. Wiechers and the Moraine Land Company paid on principal and interest $3,214. Under the final contract, the total purchase price Wiechers was to pay (at his option) was $8,600, being $6,600 of the bank contract price and $2,000 to Wilford and Carey. He and the Moraine Land Company paid $2,500 on principal. The payment of part of the purchase price confers no right to default on the balance; nor raises equities in the vendee when he offers no excuse for the default.

This leaves as the sole issue of the case whether defendant Moraine Land Company was in default when the notice of forfeiture was served. It is purely a question of law, resting upon a single fact. I so thought on original presentation of the case. But (and not without embarrassment), I find on closer study of the record that the single fact upon which defendant denies default is not supported by

legal evidence but rests upon assertions and inadmissible inferences and implications. The essential fact is whether, when the Moraine Land Company obtained the extension to January 15, 1932, to pay the $500 balance, it unequivocally agreed with the bank to assume personal liability for the amount and pay it and the bank so accepted its promise. In my opinion, then and now, such promise and acceptance would have released plaintiff and her land from the obligation.

While the motion for rehearing was pending, this court made special request of counsel to point out the record references to the assumption by the Moraine Land Company of the $500 payment. In answer thereto, defendants' attorneys cited the pleadings and certain correspondence. Such references failing to show a direct and unequivocal promise and acceptance, counsel urge that they may be implied therefrom.

In the pleadings defendants alleged in general terms that the Moraine Land Company had made certain payments on principal and interest and had made arrangements to finance the balance of the contract, which arrangements had been agreed to by the bank. The allegations were traversed by plaintiff and required proof. The Moraine Land Company repeated the general statement in a letter to plaintiff in February, 1933.

In December, 1931, after service of notice of forfeiture, defendants' attorney wrote plaintiff that there had been no default, that defendants had paid $500 on principal and had secured an extension in writing of the balance of the principal to January 15, 1932, "at which time such balance will be paid." The letter is not proof of the facts stated therein.

In conversation with the banker, before serving notice of forfeiture, plaintiff was told that the

Moraine Land Company's attorney had paid $500 and interest and would be in in a few days to pay the balance, but she was not told that he had agreed to pay the balance nor that a written extension had been granted. Her testimony is undisputed.

Even if accepted as evidence, such record references fail to show promise by the Moraine Land Company to pay the bank and acceptance by the latter. Proof of them would not have afforded plaintiff a defense against collection of the $500 balance from her or her land by the bank. The record would afford no basis for a prosecution for perjury, upon proof that there had been no promise to pay and acceptance, so known to the pleader and letter writers. Nor may implications or inferences of such promise and acceptance be drawn from the testimony, first, because they are not the natural and logical result thereof; and second, because plaintiff, with proof of the fact available, if it were the fact, failed to produce it. Neither the banker nor defendants' attorney, who handled the transaction, nor any other person, took the stand and testified to such promise and acceptance. Upon the record it must be held that there was no novation of the $500 balance.

This eliminates the question of release of a surety by extension of time to the principal without the surety's consent. Any relation of suretyship between Wiechers and plaintiff under the original contract was destroyed by the supplemental agreement which released him from obligation to pay. The assignment from Wiechers to the Moraine Land Company was by way of quitclaim deed and the company did not assume or agree to make the payments. Consequently, when the extension was granted and notice of forfeiture served, plaintiff was the only person indebted to the bank in rela-

tion to the transaction or who had agreed to pay the bank. She was the principal and there was no surety for her.

The fact, if it be the fact, that by the extension receipt the bank estopped itself from foreclosing its contract during the extension period, could have no effect upon plaintiff's contract with the Moraine Land Company. The bank and company could not, without her consent, modify or alter her contract with the company; otherwise they, without her acquiescence, could have extended the period indefinitely and given the company unlimited time to speculate with the property without paying or agreeing to pay any part of the purchase price. Only a complete discharge of the $500 obligation of plaintiff and her land to the bank could have satisfied the Wiechers contract and prevented default. Wiechers was a subpurchaser of the premises.

"So, also, in the case of a vendor's lien by reason of a retained title, an agreement by the vendor and a subpurchaser for an extension of time does not affect the vendor's right to the lien." 66 C. J. p. 1273.

Consequently, the Moraine Land Company was in default in its contract with plaintiff when the notice of forfeiture was served. This renders it unnecessary to determine whether it also was in default with reference to the $1,501 transaction.

The forfeiture was in accordance with the contract and was valid. No equitable reasons have been presented to justify the court in relieving from the forfeiture.

If the rule were applied that equity will not aid in enforcing forfeiture, the proper decree would be to compel transfer of the original title from the Moraine Land Company to plaintiff on payment of

the balance due on her original contract with the bank and to dismiss the bill seeking forfeiture of the contract, leaving plaintiff to her remedy at law. However, in their pleadings, defendants did not urge the rule but, on the contrary, asked that the two suits be consolidated and the whole controversy be determined. Moreover, the remedy at law would be inadequate and the matter should be disposed of in one decree.

The decree must be reversed and one entered for plaintiff, with costs.

EDWARD M. SHARPE, J., concurred with FEAD, J.

BUTZEL, J. I concur in the result for reasons stated in my opinion on the first hearing.

BUSHNELL, J., concurred with BUTZEL, J.

POTTER, C. J. (*dissenting*). In this case, after considerable delay, a rehearing was granted. Having written the opinion which temporarily prevailed, I have, after reconsideration, seen no reason for changing the result arrived at when the case was originally decided and reported. *Keyworth* v. *Wiechers,* 269 Mich. 687.

When the case was before considered, emphasis was perhaps not placed upon the most vital principles involved. In what follows, the order of discussion of the questions considered is not the same as in the original opinion.

The plaintiff invokes the conscience of a court of equity. She seeks equity and must, therefore, do equity. The writings involved are in part set up as marginal notes to the former opinion and need not be repeated.

The contract of November 27, 1929, recited the making of the original contract between plaintiff and the Chemical State Savings Bank, of Midland, and its terms of payment; that February 6, 1929,

plaintiff had been granted an extension of time for one year, or until November 29, 1929, in which to make payments in consideration of the payment by plaintiff of three years' back taxes prior to March 1, 1929. The payment of the taxes is recited as having been made by plaintiff. There was to grow due upon the contract November 29, 1929, $2,000 in principal, together with the taxes for the year 1929. It recited the Wilford and Carey contract whereby plaintiff agreed to set over to them, in consideration of the payment by them of $2,000 to her, a one-half interest in all oil and gas produced on the premises. It recited that plaintiff could buy back from Wilford and Carey for $4,000 the rights agreed by contract with them to be conveyed to them; that plaintiff was desirous of obtaining sufficient financial assistance with which to pay the $2,000 due upon the principal sum of the contract, together with interest thereon and the taxes of 1929; and that defendant Wiechers was desirous of advancing the necessary financial assistance. It was agreed between the parties by such contract, after setting up these recitals, that in consideration of the financial assistance to be rendered to plaintiff by defendant Wiechers, plaintiff would execute a warranty deed conveying an undivided one-half interest in the property, both surface and minerals, together with the undivided one-half interest in all the oil and gas leases upon such property, with the understanding that upon the failure to complete each and every act plaintiff was to be released from the obligations under the contract and enabled to keep the money to be paid by defendant Wiechers thereunder. Plaintiff agreed to pay one-half of the current taxes upon the premises and one-half of all future taxes if the royalty or rental to be received by her was sufficient to enable her to do so. If the royalty or rental from the premises to be received was not sufficient to en-

able her to pay one-half the taxes, defendant Wiechers was to pay all of the taxes and, if he received from such royalty or rental more than sufficient to pay the taxes, the surplus was to be split between the parties to the contract on an even basis, but plaintiff's one-half of such royalty or rental was to be paid to defendant Wiechers until the balance of $229.50 was paid. The contract further provided:

"Second party further agrees to pay the balance now due under the above described land contract with the Chemical State Savings Bank of Midland, Michigan, together with interest thereon to date of payment as is provided in said contract and also agrees to pay one-half of the taxes assessed against said property from this date forward."

There was a provision in the contract that all revenues earned by the property by reason of the use thereof for grazing, sale of wood, or farming or agricultural use, should go to the first party for the period of three years, and thereafter to be divided equally. In consideration thereof, defendant Wiechers agreed to pay the $2,000 in principal payment then due, to pay $462 in interest upon the amount to grow due upon the contract, and taxes for the year 1929 in the amount of $459; and $2,462 was then paid by defendant Wiechers, who also agreed to pay the $4,000 to Wilford and Carey for a release of their rights in the premises.

1. The principal dispute arises over the contract of November 24, 1930. There is no question that the contract of November 24, 1930, left the contract of November 29, 1927 (November 27, 1929), in full force and effect except as modified by the contract of November 24, 1930. The contract of November 24, 1930, so provided.

What were these modifications in the contract of November 27, '1929, made by the contract of Novem-

ber 24, 1930? Plaintiff was to convey to defendant Wiechers an undivided one-half interest in all oil and gas and/or revenues therefrom, but not of the surface rights on the premises except such as were necessary for the exploration of the property. The rights which defendant Wiechers had acquired by the contract of November 27, 1929, to the wood from the premises and in the agricultural and grazing rights were released by him and were thereafter to be held by plaintiff. Through negotiations with Wilford and Carey, the amount of $4,000, which they claimed, was reduced by them to $2,000, which amount was to be paid by defendant Wiechers. The contract provided for a forfeiture of Wiechers' rights unless he should within 90 days after receiving notice of such forfeiture make the payments due upon the contract. The contract further provided that in consideration of the payments made at the time of the execution and delivery of this supplemental agreement, no forfeiture could be declared for a period of 12 months after November 24, 1930.

Yet, it is gravely claimed by plaintiff that this arrangement amounted only to an option. The contract of November 27, 1929, gave to defendant Wiechers an interest in the land. The contract of November 24, 1930, left the former contract in full force and effect. It constituted something more than an option. Notice of forfeiture is not necessary to terminate an option, and there is no necessity in an option that there be a provision that no forfeiture may be declared for a period stipulated therein. The only object and purpose of a forfeiture is to terminate property rights. The contract itself, as well as the conduct of the parties, indicate that at the time the contract was made it was not considered as a mere option. In plaintiff's affidavit, filed March 8, 1933, she swears it was Wiechers' duty,

or the duty of the Moraine Land Company, if his assignee, to pay the money directed to be paid by them in fulfillment of plaintiff's contract with the Chemical State Savings Bank, of Midland.

2. Plaintiff, a shrewd and intelligent speculator, obtained the equity in this property in settlement of divorce proceedings instituted against her former husband. After such divorce proceedings, a new contract was made between the bank and plaintiff. The only way she could acquire title to the premises was to carry out and perform the contract with the Chemical State Savings Bank, of Midland. The burden was upon her of making the payments upon such contract to the bank. To obtain the money to make such payments was her object and purpose in all of her negotiations and borrowings. The question uppermost in her mind at all times was to procure the money to make the necessary payments to save the property and save herself the one-half interest in the oil, gas and mineral rights therein, and whatever else she was able to salvage without her ever investing a dollar of capital which originated with or was earned by her. Up until the property was fully paid for and her rights secured so they could not be forfeited, she had no other object or purpose, and but for the greed engendered by conflicting oil interests there would probably now be no suit in this court.

Stripped of all surplus verbiage, this is a bill in equity filed by plaintiff against defendants to recover the title and possession of the land in question after the vendors in the original contract have been fully paid and satisfied, and defendants have fully carried out and performed the several contracts with plaintiff, whereby plaintiff seeks the benefit of the payments made by defendants for the land as well as the land itself. Such action on the part of

the plaintiff cannot appeal to any court which professes to administer the principles of equity jurisprudence.

It seems clear to me that under the circumstances, notwithstanding the language of the contracts involved, time was not so far of the essence of this contract as, after full performance by the defendants, accepted by the vendor, to deprive defendants of what they paid for the land which was deeded by the vendor for their use and benefit.

It is well settled that time is not of the essence of a contract unless the parties have either expressly stipulated, or the nature of the contract requires it. 13 Halsbury's Laws of England, p. 154.

Where, from the contract or from the nature of the case, time is not shown to be of the essence of the contract, courts of equity have been long in the habit of relieving against a mere lapse of time where it has been consistent with the substance of justice to do so. *Roberts* v. *Berry,* 3 DeG. M. & G. 284 (43 Eng. Rep. 112); *Hunter* v. *Seton,* 7 Ves. 264 (32 Eng. Rep. 108); *Parkin* v. *Thorold,* 16 Beav. 59 (22 L. J. Ch. 170, 61 Eng. Rep. 239); *Levy* v. *Lindo,* 3 Mer. 81 (36 Eng. Rep. 32); *Lennon* v. *Napper,* 2 Sch. & Lef. (Irish Ch.) 682.

The date for completion specified in the contract does not affect the equitable relation of vendor and purchaser. Before this date, the purchaser is already the equitable owner subject to completion. 13 Halsbury's Laws of England, p. 100.

In *Bomier* v. *Caldwell,* 8 Mich. 463, decided March 6, 1841, the court, by Chief Justice Fletcher, after reviewing the English and American authorities, said:

"The general principle seems to be well established, that where the parties to the agreement have

not expressly stipulated that performance at a particular time shall be an essential part of the agreement, and where, from the nature and circumstances of the contract and situation of the parties, there would be no particular hardship upon the party against whom the execution of the contract is sought to be enforced, and the conduct of the party in default not being unfair, or his claim unconscientious, a court of equity, so far as non-performance at the time is concerned, will aid the party in default, and decree a specific execution of the agreement as the only adequate measure of equitable justice between the parties.''

Mere failure of the vendee to pay at the time agreed upon does not *ipso facto* forfeit his equitable rights. *Morris* v. *Hoyt,* 11 Mich. 9.

As a rule, time is not of the essence of these contracts, and where it is not so in fact, a declaration in the contract that it shall be will not make it so. *Morris* v. *Hoyt, supra.*

''Time cannot be made essential in a contract, merely by so declaring, if it would be unconscionable to allow it. Parties may stipulate to make it so, where the stipulation is reasonable; but, as in stipulated damages, if the stipulation is not reasonable, courts will not regard it.'' *Richmond* v. *Robinson,* 12 Mich. 193, 202, per Justices CAMPBELL, MARTIN and CHRISTIANCY.

''By the terms of the contract, it was expressly understood and declared that time is and shall be deemed and taken as of the very essence of the contract. Time is always of the essence of a contract when an act is required to be done within a specified time; as much so as the act itself, and no more. Every part of a contract is of its essence. It is not very clear what courts and text-writers who use this phrase mean, unless it be that a subsequent perform-

ance cannot be decreed, under all the circumstances of the case, by a court of equity, by way of relieving against the forfeiture of the contract, without doing injustice to the party against whom the relief is asked. This is the principle equity acts on in relieving against forfeitures. Nor will it, by any stipulation of the parties, be ousted of its jurisdiction, or refuse to relieve against the exaction of the pound of flesh, although the parties have, in express terms, stipulated for it." *Richmond* v. *Robinson, supra,* 199, per Manning, J.

Lapse of time alone does not put an end to a vendee's rights, for time is not of the essence of the undertaking to pay money by such a contract. *Converse* v. *Blumrich,* 14 Mich. 108 (90 Am. Dec. 230).

"It has been held that where parties to an agreement have not expressly stipulated that performance at a particular time shall be an essential part of the agreement, and where from the nature and circumstances of the contract and the situation of the parties there would be no particular hardship upon the party against whom the execution of the contract is sought to be enforced, a court of equity, so far as performance at the time is concerned, will aid the party in default." *Munro* v. *Edwards,* 86 Mich. 91.

It is said that time is of the essence of contracts and leases in relation to oil and gas. Whether time is of the essence of a contract in a particular case depends upon the circumstances. And the undisputed record in this case shows that time was never treated as of the essence of the contract either with the Chemical State Savings Bank or between the plaintiff and the defendants herein.

3. The most important question is whether a court of equity, whose jurisdiction and power plaintiff has invoked, will lend itself to enforce a penalty or for-

feiture which will permit plaintiff to regain the land which she sold to defendants and which the defendants bought and paid for in full.

Perhaps, the two leading authorities in England on relief from penalties and forfeitures are *Peachy* v. *Duke of Somerset,* 1 Strange, 447 (93 Eng. Rep. 626), and *Sloman* v. *Walter,* 1 Bro. C. C. 418 (28 Eng. Rep. 1213), the holdings in which cases come to this—whether compensation will furnish effective relief. Smith, Principles of Equity (5th Ed.), pp. 252, 253.

Stated in the language of Snell, Principles of Equity (19th Ed.), p. 357:

"The court will only relieve against a forfeiture where the court could give compensation."

These rules have been modified by the text-writers in this country.

"Whenever a penalty or forfeiture is inserted in a contract merely to secure the performance of some act or the enjoyment of some right or benefit, the performance of such act or the enjoyment of such right or benefit is the substantial and principal intent of the instrument, and the penalty or forfeiture is only accessory, and therefore intended only to secure the damage actually incurred; and hence equity will relieve against the penalty or forfeiture, and decree compensation, whenever such compensation can effectually be made." Fetter, Equity (1st Ed.), p. 107.

"Forfeitures are not regarded with favor, and a jurisdiction similar to that in the case of penalties is exercised by equity to relieve against the consequences of forfeitures incurred at law, the rule being that such relief will be given where compensation can be fully made, on the tender or payment of such compensation, notwithstanding relief may be had at law." 21 C. J. pp. 100, 101.

"Ordinarily, where the default is merely in the payment of money it may be compensated and relief will be granted." 21 C. J. p. 101.

"The exercise of the jurisdiction to relieve against forfeitures demands in most cases the application of the equitable doctrine that time is not essential, and that a failure to perform within the appointed time may be relieved against where compensation can be made for the delay." 21 C. J. pp. 102, 103.

"Relief against forfeitures is an independent ground of equity jurisdiction not dependent upon other equitable circumstances such as fraud, accident, or mistake." 21 C. J. p. 103.

"The general principle now adopted is, that wherever a penalty is inserted merely to secure the performance or enjoyment of a collateral object, the latter is considered as the principal intent of the instrument, and the penalty is deemed only as accessory, and therefore as intended only to secure the due performance thereof or the damage really incurred by the nonperformance. In every such case the true test (generally if not universally) by which to ascertain whether relief can or cannot be had in equity is to consider whether compensation can be made or not. If it cannot be made, then courts of equity will not interfere. If it can be made, then if the penalty is to secure the mere payment of money, courts of equity will relieve the party upon paying the principal and interest." 3 Story's Equity Jurisprudence (14th Ed.), p. 342.

"It is a universal rule in equity never to enforce either a penalty or a forfeiture. Therefore courts of equity will never aid in the devesting of an estate for a breach of a covenant on a condition subsequent, although they will often interfere to prevent the devesting of an estate for a breach of a covenant or condition." 3 Story's Equity Jurisprudence (14th Ed.), p. 349.

"There are, as intimated above, special circumstances which will entitle a defaulting party to relief against a forfeiture in cases where otherwise it would not be granted. Although the agreement is not one measurable by a pecuniary compensation, still, if the party bound by it has been prevented from an exact fulfillment, so that a forfeiture is incurred, by unavoidable accident, by fraud, by surprise, or by ignorance, not wilful, a court of equity will interpose and relieve him from the forfeiture so caused, upon his making compensation, if necessary, or doing everything else within his power." 1 Pomeroy's Equity Jurisprudence (4th Ed.), p. 857.

"Where the terms of an agreement have not been strictly complied with, or are incapable of being strictly complied with, still, if there has not been gross negligence in the party, and it is conscientious that the agreement should be performed, and if compensation may be made for any injury occasioned by the non-compliance with the strict terms, in all such cases courts of equity will interfere, and decree a specific performance. For the doctrine of courts of equity is not forfeiture, but compensation, and nothing but such a decree will in such cases do entire justice between the parties." 2 Story's Equity Jurisprudence, p. 83.

"One of the most frequent occasions on which courts of equity are asked to decree specific performance of contracts is where the terms of the contract have not, in point of time, been strictly complied with. Time is not generally deemed in equity to be of the essence of the contract, unless the parties have expressly so treated it, or it necessarily follows from the nature and circumstances of the contract." 2 Story's Equity Jurisprudence, p. 85.

The last above quotations from Story's Equity Jurisprudence are quoted from the opinion of the court in *Bomier* v. *Caldwell, supra.*

" 'Courts of equity will never aid in the devesting of an estate for a breach of a covenant on a condition subsequent, although they will often interfere to prevent the devesting of an estate for a breach of a covenant or condition.' 2 Story's Equity Jurisprudence (13th Ed.), § 1319," quoted with approval in *Hodges* v. *Buell,* 134 Mich. 162.

"It is well settled that where the agreement secured is simply one for the payment of money, a forfeiture either of land, chattels, securities, or money, incurred by its nonperformance, will be set aside on behalf of the defaulting party, or relieved against in any other manner made necessary by the circumstances of the case, on payment of the debt, interest, and costs, if any have accrued, unless by his inequitable conduct he has debarred himself from the remedial right, or unless the remedy is prohibited, under the special circumstances of the case, by some other controlling doctrine of equity." 1 Pomeroy's Equity Jurisprudence (4th Ed.), § 450.

These principles have, from the earliest times, received the approval of this court.

"In the former case between the same parties, we held that a court of equity would not lend its aid to divest an estate for the breach of a condition subsequent, although that aid would be sometimes extended to relieve against such a condition. We *cannot,* therefore, decree a forfeiture in the present case; and we certainly *would not,* did we possess the power." *Michigan State Bank* v. *Hammond,* 1 Doug. (Mich.) 527, 540.

"Equity will not lend itself to enforce a penalty or forfeiture." *Crane* v. *Dwyer,* 9 Mich. 350 (80 Am. Dec. 87).

Equity will not interfere to enforce a forfeiture, but, where such relief is sought, will leave the party

complaining to such relief as he can obtain elsewhere. *White* v. *Railway Co.,* 13 Mich. 356.

"Relief against forfeitures is a very ancient head of equity, and it is founded upon the broad and benign principle, that the possessor of a legal right shall not be allowed to use it to work oppression or injustice." *Sandford* v. *Flint,* 24 Mich. 26, 30.

"A court of equity has no jurisdiction to enforce forfeitures. If a party desires such relief he must seek it at law, or by entry for the breach of condition." *Fitzhugh* v. *Maxwell,* 34 Mich. 138, 139.

"It has been held in this State that time is not generally so far of the essence of a contract that a failure to perform within a period specified will necessarily preclude a party from being allowed to perform subsequently. * * * When a vendee has failed to perform his obligations, relief is not a matter of right. * * * The ground on which equity relieves against forfeitures is that it would operate oppressively or fraudulently to refuse." *Gram* v. *Wasey,* 45 Mich. 223, 228.

"A forfeiture is not favored either at law or in equity, and a provision for it in a contract will be strictly construed, and courts will find a waiver upon slight evidence." *Lyon* v. *Travelers' Ins. Co.,* 55 Mich. 141, 146 (54 Am. Rep. 354).

"The complainant is not entitled to enforce a forfeiture of the estate in equity, for equity does not aid in enforcing forfeitures." *Watrous* v. *Allen,* 57 Mich. 362, 367 (58 Am. Rep. 363).

"We have repeatedly held that equity will not render aid in enforcing forfeitures, but will interpose to relieve from them." *Hodges* v. *Buell,* 134 Mich. 162, 170.

"Equity will not aid to enforce forfeitures." *Wallace* v. *Kelly,* 148 Mich. 336 (118 Am. St. Rep. 580).

It is the province of the court to relieve against forfeitures. *John* v. *McNeal,* 167 Mich. 148.

"Equity will sometimes relieve against forfeiture. It will do so, ordinarily, when it is incurred by the mere nonperformance of a pecuniary obligation at the day, when time is not of the essence of the contract, either made so by the nature of the subject-matter or by the express terms of the agreement, when performance by the defaulting party can be secured and when his general conduct has not been such as to render it unjust that he should be relieved." *Lozon* v. *McKay,* 203 Mich. 364.

"Equity will sometimes relieve against forfeiture." *Hubbell* v. *Ohler,* 213 Mich. 664.

Plaintiff was relieved from a forfeiture of his rights in that case by the court.

"Equity dislikes forfeitures and not only will not aid in enforcing them, but will restrict their effect as far as possible." *Hull* v. *Hostettler,* 224 Mich. 365, 369.

"The law does not favor forfeitures, and he who plants himself upon a forfeiture must look well to where he stands." *Zadigian* v. *Gard,* 223 Mich. 147, 152.

"The law does not favor forfeitures, and even though the alleged breaches upon which defendant sanitarium bases its claim to avoid this lease actually are technical violations of the strict terms of the lease, they are not such violations as would justify a court of equity in declaring what will amount to a forfeiture of plaintiff's rights." *Aniba* v. *Burleson Sanitarium,* 229 Mich. 118, 122.

"Forfeitures are in their nature penalties, or pecuniary punishment, not favored either in law or in equity." *Bonham* v. *Northwestern National Ins. Co.,* 230 Mich. 349, 353.

"A forfeiture is not favored either at law or in equity and a provision for it in a contract will be strictly construed and courts will find a waiver upon slight evidence, when the equity of the claim made * * * is, under the contract, in favor of the insured." *Smith* v. *Independent Order of Foresters,* 245 Mich. 128.

Defendants have paid in full the purchase price of the premises to the vendor. The vendor accepted the purchase price and interest thereon up to the date of payment. It confessed and acknowledged the receipt of the payment by executing and delivering a deed of the premises. Plaintiff cannot invoke the aid of a court of equity to keep the property bought and paid for by defendants and deeded by the vendor as requested by them. The facts clearly indicate that to grant plaintiff the relief prayed not only would not do equity, but would perpetrate inequity. Plaintiff's bill, on this ground alone, should be dismissed, and the decree of the trial court affirmed.

4. The underlying contract by which the owner of the legal title to the premises, the Chemical State Savings Bank, of Midland, Michigan, agreed to sell and convey the premises to plaintiff, provided that upon the fulfillment of the contract of purchase by the vendee, "part . . . of the first part will well and faithfully execute and deliver a good and sufficient deed or deeds of, and thereby convey to the said party of the second part, her heirs and assigns, a good and unincumbered title in fee simple to the above-described premises with their appurtenances."

When the time came for the payment of the balance of the purchase price by the Moraine Land Company, the Chemical State Savings Bank, the vendor, was not in a position to convey an unin-

cumbered title in fee to the premises. The title was incumbered by an outstanding lease. That an outstanding lease of real estate constitutes an incumbrance thereon does not admit of argument. This covenant in the contract upon the part of the vendor constituted a condition precedent to the payment in full of the balance of the purchase price by the vendee and by the Moraine Land Company. *Elson v. Jones,* 42 Idaho, 349 (245 Pac. 95); *Northwestern National Life Ins. Co. v. Ward,* 56 Okla. 188 (155 Pac. 524); *Sunshine Cloak & Suit Co. v. Roquette Bros.,* 30 N. D. 143 (152 N. W. 359, L. R. A. 1916 E, 932); *Adams* v. *Railway Co.,* 64 W. Va. 181 (61 S. E. 341); 6 R. C. L. p. 904; 13 C. J. pp. 564–570.

This is the rule recognized in Michigan.

"Equity could not allow the rights of a purchaser, under such a contract, to be forfeited by the vendor, when the latter had no title to convey, and was not in position to perform his own undertaking." *Converse* v. *Blumrich, supra.*

"When they complain of a default, it is upon the assumption that they have themselves performed, and a showing to the contrary is fatal to their case." *Williams* v. *Hodges,* 41 Mich. 695, 698.

"He could not forfeit the contract for nonpayment, and oust the defendant of possession, when he himself was not in a condition to perform on his own part." *Getty* v. *Peters,* 82 Mich. 661, 668 (10 L. R. A. 465).

"Defendant covenanted that the land was free from all incumbrances, and to give a warranty deed. The land was subject to a mortgage, which was not discharged until June 14, 1904. Defendant was not in position to demand payment or to forfeit the contract until he was in a position to perform himself." *Bartlett* v. *Smith,* 146 Mich. 188 (117 Am. St. Rep. 625).

''A vendor in default, who is not in condition to perform on his part, cannot forfeit the contract for nonpayment by the vendee.'' *Wexler* v. *Poe,* 245 Mich. 442, 447.

The rule that a vendor is not entitled to forfeit a land contract when he himself is in no position to perform by making conveyance in accordance with the contract was adopted for the protection of the vendee. *Langley* v. *Kirker,* 247 Mich. 443.

''To entitle the vendor to avoid the contract he himself must not be in default. So, too, he is not entitled to rescind or forfeit the contract for a default of the purchaser unless he is able to perform in accordance with the terms of the contract. However, where land is to be conveyed on payment of the last installment of the purchase money, the fact that there is a defect in the vendor's title has been held not to prevent the vendor from forfeiting the contract for default in payment of installments before the last, provided the vendor is not insolvent, but he is prevented from forfeiting or rescinding the contract because of a default in payment of the last installment where he is unable to perform his part of the contract.'' 66 C. J. p. 758.

The covenant in the contract upon the part of the vendor to convey, upon payment in full of the purchase price, an unincumbered title to the premises in question constituted a condition precedent to the payment in full of the balance of the purchase price. The performance of the conditions of the contract by the vendee, and by the Moraine Land Company, by the payment upon the purchase price was dependent upon the precedent performance and discharge by the vendor of the covenant against incumbrances. The vendor defaulted in this precedent covenant, and it was not necessary for the vendee, or those claiming under her, to pay the balance of the pur-

chase price until the vendor was in a position to perform. Nor will it do to say that the outstanding lease was unimportant or was invalid. It was an existing, outstanding lease of a part of the premises, and, whether valid or not, constituted a cloud upon and an incumbrance against the title, which it was the duty of the vendor to cancel and discharge. It does appear there was an outstanding lease, and it does not clearly appear whether that lease was valid or not.

''The following doctrine seems to be sustained by the great majority of the American decisions: Where the instrument or proceeding constituting the alleged cloud is absolutely void on its face, so that no extrinsic evidence is necessary to show its invalidity, and where the instrument or proceeding is not thus void on its face, but the party claiming under it, in order to enforce it, *must necessarily* offer evidence which will *inevitably* show its invalidity and destroy its efficacy,—in each of these cases the court will not exercise its jurisdiction either to restrain or to remove a cloud, for the assumed reason that there *is* no cloud. While this doctrine may be settled by the weight of authority, I must express the opinion that it often operates to produce a denial of justice. It leads to the strange scene, almost daily in the courts, of defendants urging that the instruments under which they claim *are void, and therefore that they ought to be permitted to stand unmolested,* and of judges deciding that the court cannot interfere, *because the deed or other instrument is void,* while from a business point of view every intelligent person knows that the instrument is a serious injury to the plaintiff's title, greatly depreciating its market value, and the judge himself ·who repeats the rule would neither buy the property while thus affected nor loan a dollar upon its security. This doctrine is, in truth, based upon mere verbal logic, rather than upon considerations of

justice and expediency." 4 Pomeroy's Equity Juris-
prudence (3d Ed.), pp. 2755–2758.

The defendant Moraine Land Company carried
out and performed the contract and paid the entire
balance due upon the contract, except that paid by
defendant Wiechers who assigned his interest to
the Moraine Land Company, and paid to the defend-
ant Chemical State Savings Bank, of Midland,
Michigan, the entire balance due upon the contract
in fulfillment of the terms of the contract made be-
tween Wiechers and the Moraine Land Company.

After the balance of the purchase price upon the
original contract between the Chemical State Sav-
ings Bank and plaintiff was fully paid up, except
the last payment, the plaintiff was in no position
to cause an unincumbered title to be conveyed to
defendant Wiechers or the Moraine Land Company,
nor was defendant Chemical State Savings Bank
in such position. And, not being in a position to
tender an unincumbered title of the premises, neither
party was in a position to enforce a forfeiture of
the rights of the Moraine Land Company or of de-
fendant Wiechers.

The vendor was under obligation to discharge or
cancel the outstanding lease as a condition precedent
to the payment of the full amount of the purchase
price. It had failed to do so within the time fixed
by the contract for payment of this balance. It had
defaulted in the performance of the condition pre-
cedent. It had failed to live up to the covenants
contained in the original contract to sell the premises
to the plaintiff, and it would not have been neces-
sary, had defendants sought to enforce specific per-
formance, to allege a tender of performance or even
an ability to perform. 5 Page, Contracts (2d Ed.),
§ 2960, p. 5228; 13 C. J. p. 726, § 849.

"Where anything is to be done by plaintiff precedent to performance by defendant, plaintiff must, as a rule, allege performance by himself in declaring for a breach of defendant's promise. But where it is alleged that nonperformance of a condition precedent was caused by the act of defendant, plaintiff is not bound to aver performance or readiness to perform on his part; he may simply allege the facts constituting his excuse." 13 C. J. p. 726, § 849.

Plaintiff was not in a position, at the time she gave notice of forfeiture, to perform upon her part, nor was the Chemical State Savings Bank in a position to perform at the time such notice of forfeiture was given; and the notice of forfeiture was, therefore, inoperative, invalid, and of no effect so far as the right of the defendant Moraine Land Company is concerned. For this reason alone, plaintiff was not entitled to decree.

5. There is no question but that performance within the time specified in a contract may be waived by oral or written agreement. *Kimball* v. *Goodburn,* 32 Mich. 10; *Hickman* v. *Chaney,* 155 Mich. 217; *Bugajski* v. *Siwka,* 200 Mich. 415; *Waller* v. *Lieberman,* 214 Mich. 428; *Sliwinski* v. *Gootstein,* 234 Mich. 74.

In *Waller* v. *Lieberman, supra,* the court quoted with approval the rule stated in 39 Cyc., p. 1384, as follows:

" 'Where strict compliance with contract has been waived. Whether time is or is not of the essence of the contract, if the vendor has waived strict compliance with its terms as regards time of payment, he cannot thereafter rescind or forfeit the contract, without notifying the purchaser of his intention to do so unless payment is made, and allowing him a reasonable time for performance, and it has been held immaterial whether the extension of time was

upon a valuable consideration or not. After forfeiture for a default has been waived, time becomes essential thereafter only where the vendor makes it so by proper notice and demand. The decisions proceed upon the theory that the vendor "cannot use his own indulgence as a trap in which to catch the purchaser!" ' "

This rule was again quoted with approval in *Sliwinski* v. *Gootstein, supra,* where the trial court held that where payments upon a land contract had not been regularly made, but plaintiffs had accepted them and the vendors, by accepting payments in this manner, waived the provision of the contract having to do with making time the essence of performance in the contract, plaintiffs, under the authorities, were precluded from forfeiting the land contract until they properly notified the defendants of their intention to do so and to make a proper demand for the overdue payment. In that case, the court cited with approval *Corning* v. *Loomis,* 111 Mich. 23; *Waller* v. *Lieberman, supra; Fry* v. *Miller,* 220 Mich. 463; *Letinsky* v. *Smith,* 220 Mich. 465; *Zadigian* v. *Gard,* 223 Mich. 147; *Malys* v. *W. C. Hood Realty Corp.,* 229 Mich. 110. It quoted with approval the language of *Treat* v. *Railway Co.,* 157 Mich. 320 (133 Am. St. Rep. 347), where it is said:

"We are of opinion that, before a forfeiture could be declared by plaintiff, he was bound to give notice of his intention to claim a forfeiture, coupled with a notice to defendant of the particular default of defendant relied upon by him. After such notice the defendant should have reasonable time in which to comply, and thus avoid forfeiture."

In this case, it is said:

"If a vendor accepts a payment on the purchase price after it is due, he thereby waives his then

existing right to declare a forfeiture because of the failure to make the payment on time. If such vendor should, after accepting the payment, declare a forfeiture because of the failure to make such payment on time and should institute an action of ejectment, the purchaser might use such waiver in his defense. Surely the purchaser to have benefit of such waiver need not file a bill in equity to be relieved of the forfeiture and to restrain such action at law.

"If a vendor repeatedly accepts payments after due from the purchaser, habitually indulges him in delinquency, he thereby waives, as to future payments, strict compliance with the terms of the contract as regards time of payment, and he must give the said preliminary notice or demand before he can declare a forfeiture, and if forfeiture be declared without the preliminary notice, and ejectment instituted, the waiver may be used in defense of the action."

The court, also, in that case quoted with approval from a note contained in 9 A. L. R. 996, 1002, and since the decision of that case, this court has not departed from the rule therein laid down. For this reason, plaintiff was not entitled to decree.

6. The opinion heretofore filed held the arrangement existing between the parties was something more than an option. The reasons for so holding appear from *Keyworth* v. *Wiechers,* 269 Mich. 687, 693–695, and a consideration of the terms of the contract itself, and are stated above. Under these instruments in writing, defendants acquired an interest in lands to the extent one must consider the vendor as holding the title in trust for the beneficial owners, the plaintiff and the defendants. The contracts were so treated by plaintiff. If defendants had no interest under the contracts, notice of for-

feiture would not have been provided for to terminate such interest.

But, suppose defendants had only an option. That would not, under the facts, benefit plaintiff. She is here asking the court to give her the land and, at the same time, permit her to reap the benefit of the payments made by defendants; to hold defendants in default in not paying in full for an unincumbered title when neither she nor the vendor were in a position to perform, when they and each of them were in default. Equity does not concern itself with weighing the comparative merits of defaults of parties to suits nor interest itself in the comparative importance of failures to perform contracts. If defendants had an option, they exercised it. The vendor accepted their money and deeded the property as requested by them. This was, if an option at all, not a gratuitous option but one based upon a valuable consideration—an option exercised, from which a resulting contract arose, which was carried out and performed by defendants, the money paid, and deed executed by the vendor.

The law has always recognized the difference between gratuitous options and options based upon a valuable consideration, as well as the difference in their treatment and effect. *Gustin* v. *Union School-District of Bay City,* 94 Mich. 502 (34 Am. St. Rep. 361); *Mier* v. *Hadden,* 148 Mich. 488 (118 Am. St. Rep. 586, 12 Ann. Cas. 88).

7. In the opinion heretofore filed, it was held plaintiff stood in the position of a surety on the contract and the bank ceased to have a lien upon the land for the payment of the balance due after extending the time of payment on the contract to the assignees of the vendee therein. Reliance was placed upon *Smith* v. *Sheldon,* 35 Mich. 42 (24 Am. Rep. 529), and *Metz* v. *Todd,* 36 Mich. 473.

"As between the assignor and the assignee, the latter becomes the principal debtor and the former a surety." *Barnard* v. *Huff,* 252 Mich. 258, 264 (77 A. L. R. 259).

"As between the assignor and the assignee, the latter becomes the principal debtor and the former a surety." *Krueger* v. *Campbell,* 264 Mich. 449, 451.

It is a general rule that a valid agreement between a creditor and the principal debtor extending the time of payment of indebtedness without the consent of a surety discharges the latter. This has always been the rule in this State (*Metz* v. *Todd, supra; Michigan State Ins. Co.* v. *Soule,* 51 Mich. 312; *Dedrick* v. *Den Bleyker,* 85 Mich. 475), and in *Gorman* v. *Butzel,* 272 Mich. 525, 531, it was said:

"The assignee becomes primarily liable for the purchase price and the vendee is his surety.   *   *   * It is familiar law that the obligee and principal cannot materially change the contract of suretyship without releasing the surety."

*Bigelow* v. *MacCrone,* 267 Mich. 217, in an action at law to recover the amount due on a land contract, the defense was based upon novation. It was held there was no privity of contract between the plaintiff and the assignee of the vendee, and no novation.

In *Cheff* v. *Haan,* 269 Mich. 593, it was held an extension of time of payment granted by the vendor to the assignee of the vendee did not discharge the debt. The question whether such extension of time of payment would discharge one in the position of a surety was not raised.

Where an extension of time of payment upon a land contract has been granted by the vendor to the assignee of the vendee, these cases hold the vendor may not declare the contract forfeited for failure

to pay within the extended time. Such an agreement amounts as between the parties thereto, if based upon a valid consideration, to a modification of the contract.

"An agreement by the vendor and a subpurchaser for an extension of time does not affect the vendor's right to the lien." 66 C. J. p. 1273.

My brethren think such extension of time of payment by the vendor to the subpurchasers under the vendee did not discharge the vendee from liability, but only suspended, during the extended time, the right of the vendor to declare the vendee and the subpurchasers under the vendee in default.

Wiechers was a subpurchaser. The contract of November 27, 1929, provided:

"Said second party further agrees to pay the balance now due under the above described land contract with the Chemical State Savings Bank of Midland, Michigan, together with interest thereon to date of payment as is provided in said contract."

The Chemical State Savings Bank extended to defendant Moraine Land Company the time of payment of part of the balance due upon the original land contract. This was an agreement between the bank and the Moraine Land Company. It was evidenced by the receipt of November 25, 1931. The contract of Wiechers was not to pay to plaintiff the amounts mentioned in the contract. It was a contract upon his part to pay to the Chemical State Savings Bank, of Midland, Michigan. The bank accepted part payment, extended the time of payment of the balance, and the balance has been paid.

The language used in the original opinion may have been too broad. Plaintiff is in no position to take advantage of the failure of defendant Wiechers

and those claiming under him to pay the Chemical State Savings Bank in accordance with the contract of November 27, 1929, as subsequently modified. The bank, during this extended time, was not in a position to claim plaintiff was in default upon her contract, not in a position to enforce payment against defendant Wiechers or defendant Moraine Land Company, but was bound by the agreement to extend the time evidenced by the receipt of November 25, 1931, and could not proceed contrary thereto. It did not so proceed, but recognized and carried out the contract. Plaintiff is not, therefore, entitled to decree.

8. Reliance is placed upon *Pendill* v. *Union Mining Co.,* 64 Mich. 172; *Negaunee Iron Co.* v. *Iron Cliffs Co.,* 134 Mich. 264; *Miller* v. *Steele,* 146 Mich. 123; *Lozon* v. *McKay, supra; Village of Grandville* v. *Railway Co.,* 225 Mich. 587 (34 A. L. R. 1408), to show that equity will enforce a forfeiture herein. The law is well settled against the contention made, by the authorities relied upon which are inapplicable to the facts involved.

*Pendill* v. *Union Mining Co., supra,* involved a mining lease, the removal of ore from the land, and consequent corresponding diminution of the value of the premises leased. The lease was for 19 years and 8 months and provided for the payment of a royalty or rental of 50 cents a long ton for the ore removed, and a minimum rental of $2,000 a year. The royalty was payable monthly. The lease provided if the lessee should fail to pay the royalty for 10 days, the lessor might re-enter without notice. The title was not purchased. If the lessee failed to pay, he forfeited his right to make prospective profits. The lease was made in 1880. Nothing was paid as rent or royalty from May 1, 1883, to March, 1885. The bill was filed to remove cloud from title.

The lease was upon the express condition that if the lessee defaulted for a period of 10 days, lessor might re-enter without notice and after such re-entry the lease should cease and be void. As said by the court:

"The bill treats the lease as a void incumbrance, under which the defendant company, by its claims thereunder, clouds the complainant's title.. The court is not asked to declare the forfeiture, but to ascertain whether or not a completed forfeiture exists, and, if so, to remove the cloud. The bill does not ask the court to do the thing, but to ascertain whether it has been done, and, if so, to declare its effect upon the title to complainants' property."

Upon the question of relieving against a forfeiture, the court said:

"Equity has jurisdiction in such cases, but the defendant company is not before us asking any such relief, and the subject cannot be further discussed."

In *Negaunee Iron Co.* v. *Iron Cliffs Co., supra,* a bill was filed to remove cloud from title. It alleged plaintiff's exclusive possession for more than 15 years and the abandonment by the lessee of the lease for nearly 40 years. The court said:

"We think, however, the main purpose of the bill is, not to declare a forfeiture of the lease, but to determine the rights of the parties, which depend largely upon the construction of the deeds, the leases, and the various acts and conduct of the parties, extending over a period of more than 40 years, and to enjoin a continuing trespass."

Those who claimed under the lessee were threatening to remove the ore from the premises. What the court really decided was this:

"That leases of this character may be abandoned and forfeited by nonuser is established in *Porter* v,

*Noyes,* 47 Mich. 55, at least as to those who have purchased or leased from the lessor, entered upon the land, developed mines, and made valuable improvements. * * * Whatever may be the rule as between the lessor and the lessee where neither has taken any steps to exercise the right to mine, as between such lessee and subsequent lessees and grantees of the lessor, who have in good faith expended large sums in developing mines, the lessee is estopped to assert his personal and incorporeal right'' to remove the ore. The court applied the rule to the lessees that they had stood by and seen large expenditures incurred and had no right to the aid of a court of conscience.

*Miller* v. *Steele,* 146 Mich. 123, involved a tax title to land. The owner of the tax title filed a bill to quiet title.

Complainant purchased from the auditor general. He had given the statutory notice and defendant had redeemed by payment to the register in chancery, and, under the statute, the tax title thereupon became void and of no effect against the land thus redeemed. Complainant claimed defendant could not enforce a forfeiture. The court held defendant had a right to redeem and that, under the circumstances, complainant had no title to forfeit.

*Lozon* v. *McKay, supra,* involved specific performance of a land contract. The court treated the bill as amended so as to ask for relief from the forfeiture, modified the decree below to relieve plaintiffs from the forfeiture upon condition that within 60 days after the entry of decree they pay to the defendant the unpaid purchase price with all arrearages thereon. This case really involves the exercise by this court of its power to relieve against forfeiture.

*Village of Grandville* v. *Railway Co., supra,* involved a bill to enforce forfeiture of a franchise, for failure to pave within the tracks of the railroad company. Part of the paving between tracks had been done. A decree was entered modifying the decree below and requiring the holder of the franchise to pave between the rails of its tracks in accordance with the franchise on or before the first day of May, 1924, in default of which defendants were to forfeit their rights under the franchise. This case in itself involved equitable relief granted against forfeiture.

Decree should be affirmed, with costs.

NORTH, J., concurred with POTTER, C. J.

WIEST, J. (*dissenting*).  Re-examination of the record discloses no prevailing equities in behalf of plaintiff but rather a grasping effort to profit by the financial help extended by defendants without recognition of any equitable rights to the contrary.

Plaintiff invokes forfeiture in equity with strictness of law barring countervailing equities.

Equity abhors forfeitures and when, as here, one is seeking only profit thereby, while tendered full performance, the court of equity will not penalize one party solely for the profit of the other but will mete justice according to equity and good conscience.

The decree in the circuit court was equitable and just and should be affirmed. I, therefore, concur in the result of the opinion of the Chief Justice.

The late Justice NELSON SHARPE took no part in the decision of this case.